# Staunton

## THE OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED v. R. S. BLACKSTOCK, JR., ETC.

September 19, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*Harry Wooding, Jr.* and *John B. Ramey*, for the plaintiff in error.

*Harris, Harvey & Brown*, for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is a suit brought by R. S. Blackstock, Jr., by his next friend, against The Ocean Accident & Guarantee Corporation, Limited, to recover the sum of $675, together with $11.63 costs, on a judgment rendered by the Corporation Court of the city of Danville in favor of said R. S. Blackstock, Jr., against one Norman Taylor.

The claim is based upon a policy of insurance issued by Ocean Accident & Guarantee Corporation, Limited, to Miss Nettie Wynn on the 25th of July, 1933, to indemnify her and certain other assured therein designated against liability for damage on account of bodily injuries caused by the ownership, maintenance or use of a certain automobile owned by Miss Wynn.

Clause seven of said policy provides that subject to its provisions it shall also cover, as additional assured, any person using the automobile described in the policy, and any person, firm, or corporation legally responsible for the use of such motor vehicle, provided that the actual use thereof is "pleasure" or "commercial" as defined in said policy, and provided further that such use is with the permission of the named assured, *except that*:

"(a) No coverage shall be extended hereby to any person or organization operating an automobile repair shop, public garage, sales agency or service station, or any agent or employees of such person or organization as respects any accident arising out of the operation thereof."

The facts out of which the case arose may be stated as follows:

Miss Nettie Wynn, the owner of the automobile, resides with her brother, R. H. Wynn, in Danville, Virginia. Norman Taylor, who was driving the car at the time of the accident hereinafter referred to, operated a service station in the city of Danville, belonging to the Texas Company, under the name of Taylor's Filling Station. Taylor had been in this business two years, and had known Miss Wynn and her brother a long time. The latter were good

customers of the station and bought all their gas and oil there and sometimes had the car washed. At the station Taylor sold oil, gas, etc., and washed and greased cars, and maintained a wash pit.

On the morning of December 27, 1933, R. H. Wynn, brother of the assured drove the car to his work at the Southern Railway Station. On his way he discovered that the car was "steaming a little." When he reached his office he found that he would have to go to North Carolina. He then drove the car to Taylor's service station, purchased a quart of alcohol for the radiator, and left the station with the intention of going home. Before reaching home, however, Wynn discovered that the radiator was "steaming" again and concluded it was frozen. He stopped the car in front of a drug store and called Taylor's filling station by telephone. Taylor answered the call and Wynn told him that the radiator of his sister's car was frozen, that he had to go to North Carolina, and that his wife and sister wanted to use the car that afternoon. He asked Taylor to come by the Wynn residence to get the car and take it to the filling station to thaw it out and then bring it back to Wynn's house. Taylor agreed to do so. Wynn then drove the car to his residence and there left it, and Taylor, as requested, came for it for the purpose of taking it to his service station to thaw it out or do whatever was necessary to the radiator.

On his way to the service station with the car Taylor struck and injured the plaintiff below, R. S. Blackstock, Jr., who brought suit by his father and next friend against Taylor, which resulted in the verdict and judgment in favor of the plaintiff for the amount hereinbefore mentioned. Execution against Taylor being returned "no effects," this suit was brought against the Guarantee Corporation under the policy issued to Miss Wynn.

At the conclusion of the evidence in the court below, the defendant moved the court to strike out the evidence introduced in the case, which motion the court sustained and a verdict was thereupon rendered by the jury in favor

of the insurance company. This verdict was subsequently set aside by the court and final judgment entered in favor of the plaintiff for the amount found by the jury. This action of the court is now before this court on writ of error.

The sole question presented by the record is whether the provisions of the policy of insurance issued Miss Wynn cover Norman Taylor so as to render the company liable to the plaintiff injured by him, or whether the company is exempted from liability by the exceptions to the coverage provisions of clause seven of the policy. It is conceded that Norman Taylor operated a "service station." He himself says so. The real question to be determined is, therefore, whether the acident was one "arising out of operation" of said service station within the meaning of said provisions of the policy.

It appears from the evidence that Taylor maintained a heated wash pit in the station in which a car could be thawed out and Wynn knew this. He and his sister had been in the habit of patronizing the station, and had had the car thawed out there on previous occasions. It was testified by Wynn that he called the station over the telephone and Mr. Taylor, who had just come in, answered the phone and that he turned the car over to Taylor on the day of the accident for no other purpose than to have it thawed out, or to do what was necessary to remedy the trouble with the radiator. Taylor said that if there had not been a heated place in the filling station to thaw it out the car would not have been in his possession.

We have been referred to only two decisions which have any bearing upon the question here involved.

The case of *Wendt* v. *Wallace,* 185 Minn. 189, 240 N. W. 470, 471, seems to bear a close resemblance to the case at bar both with respect to the facts and the provisions of the policy. In that case Gamble operated a garage, stored cars and delivered them as needed. Oman was an employee of the garage. Helen Wallace kept her car in Gamble's garage. Oman undertook to deliver it to her,

and on the way to make delivery, he collided with a car driven by Wendt. Wendt sued Wallace, the owner of the car, Gamble, the garage keeper, and Oman, the employee. He failed to recover judgment against Wallace, but recovered judgment against Gamble and Oman. Wallace carried liability insurance, its primary purpose like that of the policy in the suit being to indemnify the insured against loss from damage claims. It also extended an additional coverage to other persons using the car with her permission with the following limitation: "This agreement shall exclude any obligation of the company * * * to any person or organization other than the named assured, operating an automobile repair shop, public garage, sales agency, or service station and arising out of the operation thereof." Wendt sought to hold the company liable on his judgment against Oman, claiming that he was covered by the policy of the owner. In holding that the policy did not cover Oman the court said:

"The language in the policy is plain. The intent is clear. Coverage was extended to those driving with permission of the assured. It is equally plain and clear that the company saw fit to limit the extended coverage so as to eliminate the class of risks arising from handling and operation of the car by persons identified and connected with repair shops, public garages, sales agencies, and service stations. Gamble's garage was a 'public garage.' Such limitation is based on reason. The owner does not grant permission to these individuals. Individually they are usually unknown to him. They are in quite a distinct group from persons to whom an ordinary assured usually gives permission to drive his car."

While it is true that Taylor was well known to both Miss Wynn and her brother personally, and they doubtless would not have hesitated to grant him permission to drive the car in question under certain circumstances, that fact does not affect the reasonable provision of the policy excluding from coverage persons identified and connected with a service station and like places when the accident

arises out of the operation of such business, and permission to drive the car is not given by the owner to the service station employee individually, and separate and apart from the operation of the business.

In this instance, it seems to us that the liability of the company is no more than it would have been if Taylor had sent an employee of the service station, who was unknown to Miss Wynn and her brother, to bring the car to the station instead of doing so himself.

In the case of *State, for Use of Tondi* v. *Fidelity & Casualty Co.,* 156 Md. 684, 145 Atl. 182, 183, the question of construction of the exclusion clause of the policy was raised and decided on the pleadings. The complaint alleged that the policy insured Bell, the owner, and any other person driving with his permission; that the infant son of Tondi, the plaintiff, was killed by the automobile owned by Bell and driven by Schwartz, with the permission of Bell; that judgment was recovered against Schwartz, execution returned unsatisfied, etc. Defendant filed a plea which alleged that the policy provided that coverage "shall not be applicable to a public garage, automobile repair shop, automobile sales agency, automobile service station and the agents and employees thereof." Plaintiff filed a replication admitting the correctness of the paragraph from the policy, but alleging that "at the time of the accident the automobile was being operated by Schwartz in his individual capacity with the permission of Bell." A demurrer to this replication was sustained, and a judgment rendered in favor of defendant. In sustaining the judgment of the lower court the Court of Appeals of Maryland said:

"But it was not an answer to the second plea to say that at the time of the accident the automobile was being operated by Schwartz in his individual capacity for, and with the permission of, Bell. The replication does not deny that the automobile was entrusted by the owner to Schwartz, the owner of an automobile repair shop, for

the purpose of sale, or that Schwartz at the time of the accident was endeavoring to sell the automobile. * * * The proviso in the policy would have but little meaning if the owner of an automobile. repair shop could step outside, disassociate himself temporarily from his business, proceed to sell a car which for days had been left at his place of business to be sold, and successfully claim that he was not excluded by the proviso."

It is insisted by the defendant in error that Taylor did not handle the car in question as a part of the service sold by him in the normal, usual operation of the service station, but was driving the car to perform an act of accomodation for Mr. Wynn and, therefore, his accident did not arise out of the operation of his service station.

It is true Wynn testified that nothing was said about compensating Taylor for taking his car to thaw it out and he did not know whether Taylor was going to charge him for the service or not, and Taylor testified that it was more or less an accomodation to Mr. Wynn, but he felt obligated, since Mr. Wynn bought all of his gas and oil from him, to do what Wynn requested of him. "I called myself rendering a service to a customer."

We do not think this evidence sufficient to take the case out of the exception clause of the policy. Whether Taylor expected to make a charge for the service or whether he considered it good business policy on his part to perform the service because Miss and Mr. Wynn were valuable customers, does not vary the situation. In neither case could the service be considered as wholly gratuitous, even if that circumstance has any bearing on the question. It is clear that Taylor would not have been asked to get the car and thaw it out if he had not had the facilities to perform that service, as he had done before. It, therefore, follows that he was not driving the car under permission granted him as an individual, but as operator of a service station which had a heated place suitable for thawing the

car out, and it was entrusted to him to take to his service station for that purpose and no other.

The learned judge of the trial court takes the view in his written opinion that while the thawing of the car would have been in the operation of Taylor's business, bringing the car from Wynn's house to the service station was not a necessary incident to thawing it out, and with respect to the driving of the car Taylor had stepped aside from his business capacity and was acting in a separate and distinct sphere. The learned judge further states, however, that had the accident occurred while the defendant was doing something incidental to thawing out the car the exception would apply. "To illustrate: If he had gotten with the car to the service station, and then, in order to determine whether it would run properly, he had driven it around the block, and while doing so had struck plaintiff, the accident would have arisen out of the operation of the filling station."

We are unable to see the distinction between driving the car after it had got to the station to determine whether it would run properly, and driving it to the station for the purpose of thawing it out. It seems to us that driving the car under either of these conditions was, or would have been, incidental to thawing it out, and an accident occurring thereunder would, therefore, come within the exception.

We agree with the learned judge in the statement that the solution of the case is not free from difficulty, but viewing the clause in dispute in the light of all the facts and circumstances, we are of the opinion that Taylor does not come within the coverage provided by the policy, and the judgment of the lower court should therefore be reversed, and final judgment entered here for the plaintiff in error.

*Reversed.*