# Richmond

## Lumbermens Mutual Casualty Company, A Corporation v. Indemnity Insurance Company of North America, A Corporation.

April 21, 1947.

Record No. 3180.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*Perkins, Battle & Minor*, for the plaintiff in error.

*Bowles, Anderson & Boyd*, for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

This is an action by the Lumbermens Mutual Casualty Company to recover from the Indemnity Insurance Company of North America the sum of $10,000, interest and costs, paid by it to W. R. Bingler for personal injuries sustained by him under the following circumstances:

On March 3, 1939, T. C. Ritchie, a partner of Ritchie Electric Company and, as such, owner of a Plymouth coach, ran out of gasoline near an automobile service station operated by Mrs. Florence R. Gable in Charlottesville, Virginia. He gave his automobile keys to Willard E. Jameson, an employee of Mrs. Gable, for the purpose of having his car taken to the service station and the tank filled with gasoline.

While driving the car into the service station, Jameson negligently struck and seriously injured W. R. Bingler, who was on the premises. Bingler instituted an action against Mrs. Gable, Jameson and Ritchie. A judgment for $10,000 was rendered in the trial court against Mrs. Gable and Jameson, and the action against Ritchie was dismissed. On review, we affirmed this judgment in *Gable* v. *Bingler*, 177 Va. 641, 15 S. E. (2d) 33.

Mrs. Gable's liability as operator of a gasoline or oil supply station was covered by an insurance policy issued by the Lumbermens Mutual Casualty Company. This insurance company paid the judgment to Bingler, and required Mrs. Gable to assign her interest in the judgment against Jameson to it. Later, in Erie county, New York (where Jameson had moved), the company obtained a judgment against Jameson for $12,522, which included the principal, interest and costs of the original judgment obtained by Bingler.

Upon return of the execution on the New York judgment, marked unsatisfied, the Lumbermens Mutual Casualty Company instituted this action against the Indemnity Insurance Company of North America. The notice of motion alleged that, on the date W. R. Bingler received his injuries, the Plymouth car owned by T. C. Ritchie was covered by a policy of casualty insurance issued by defendant, which was then outstanding and in effect; that, at the time of the accident, the car was operated by Jameson with the permission of the owner; and that, because of this fact Jameson, under the provisions of the 1934 amendment to Code, sec. 4326a, was included within the coverage of the policy. The trial court sustained a demurrer to the notice of motion and entered a judgment dismissing the action. From that judgment the Lumbermens Mutual Casualty Company obtained this writ of error.

The parties will be referred to as plaintiff or defendant according to the positions they occupied in the trial court.

The defendant relies upon the pertinent restrictive provisions of its policy, which are as follows: "The unqualified

word *'insured'* * * * includes not only the named *insured*
but also any person while using the automobile and any
person or organization legally responsible for the use
thereof, provided that the declared and actual use of the
automobile is 'pleasure and business' or 'commercial', each
as defined herein, and provided further that the actual use
is with the permission of the named *insured*. The provisions
of this paragraph do not apply:

\*    \*    \*    \*    \*    \*

"(c) to any person or organization, or to any agent or
employee thereof, operating an automobile repair shop, pub-
lic garage, sales agency, service station, or public parking
place, with respect to any accident arising out of the opera-
tion thereof; * * * ."

Plaintiff's contention is that the restriction on the use of
the car by any party within the group defined in "(c)"
above is contrary to law and without legal effect because
such restriction is contrary to the express mandate of the
pertinent provisions of the 1934 amendment to Code, sec.
4326a, reading: "No such policy shall be issued or delivered
in this State, to the owner of a motor vehicle, by any cor-
poration or other insurer authorized to do business in this
State, unless there shall be contained within such policy a
provision insuring *such owner* against liability for damages
for death or injuries to person or property resulting from
negligence in the operation of such motor vehicle, in the
business of such owner or otherwise, by any person legally
using or operating the same with the permission, express or
implied, of such owner." (Italics supplied.)

Neither this nor any other statute in Virginia makes
the owner of an automobile liable for the negligence of
another simply because such negligent party was operating
the car with his permission. This being true, the provision
requiring insurance companies to indemnify the owner for
the negligence of a party operating the car with his consent
seems meaningless. The ambiguity of the language used
compels the court, in order to ascertain the legislative intent,

to invoke the ancient canons of interpretation—that is, to consider the old law, the mischief sought to be avoided and the remedy to be applied.

Prior to the adoption of the statute, the question of the liability of a car owner for its negligent operation by other members of the family with his permission was the subject of much litigation. *Cohen* v. *Meador*, 119 Va. 429, 89 S. E. 876; *Blair* v. *Broadwater*, 121 Va. 301, 93 S. E. 632, L. R. A. 1918A, 1011; *Crowell* v. *Duncan*, 145 Va. 489, 134 S. E. 576, 50 A. L. R. 1425; *Litz* v. *Harman*, 151 Va. 363, 144 S. E. 477; *Baptist* v. *Slate*, 162 Va. 1, 173 S. E. 512. For other cases see Michie's Digest of Va. and W. Va. Reports, Automobiles, p. 367, *et seq.*; annotations in 36 A. L. R. 1137, 68 A. L. R. 1008 and 100 A. L. R. 920.

Before 1934, many insurance companies, selling standard liability policies in Virginia, extended their coverage by what was generally known as the omnibus clause to any person while legally operating a motor vehicle with the permission of the named insured. See *Cartos* v. *Hartford Acci., etc., Co.*, 160 Va. 505, 169 S. E. 594; *Royal Indemnity Co.* v. *Hook*, 155 Va. 956, 157 S. E. 414; *Maryland Cas. Co.* v. *Hoge*, 153 Va. 204, 149 S. E. 448.

Under the provisions of these policies, the liability of the owner was not the decisive question. If the car was driven by another, the liability of the owner was dependent upon the circumstances, such as whether the relation of master and servant or principal and agent existed between the owner and the negligent party.

██ While the statute has been in effect for more than twelve years, the specific question here involved has never been determined by this court. This provision of the statute was taken verbatim from a similar statute of the State of New York (see sec. 109 of Insurance Law, Consol. Laws N. Y., ch. 28). When the legislature of one State adopts a statute of another State, such legislature is presumed to have adopted the construction placed upon it by the courts of that State.

The provisions of section 109 of the Insurance Law and section 59 of the Vehicle and Traffic Laws of New York, when considered together, seem clear and comprehensive. The latter section provides that every owner of a motor vehicle operated upon the highways of New York shall be liable for death or injuries to person or property resulting from negligence in the operation of such motor vehicle in the business of such owner or otherwise by any person legally using or operating the same with the owner's permission, express or implied.

While the New York statute does not compel an owner of a motor vehicle to purchase liability insurance, it renders him personally liable for the negligence of another who, with his permission, operates his motor vehicle on the highway. However, section 109 compels insurance companies, when they sell liability insurance to the owner of a motor vehicle, to include in the coverage insurance for such owner against liability for damages or injuries to others resulting from the negligent operation of the motor vehicle by another with his permission. The provisions of section 109 and section 59 should be borne in mind in order to grasp the full significance of the New York decisions construing either or both.

The action in *Brustein v. New Amsterdam Cas. Co.*, 255 N. Y. 137, 174 N. E. 304, was to recover from an insurance company damages for the loss of services of plaintiff's wife, who was injured by the negligence of a party operating a motor vehicle with the consent of the owner. In a separate action against the insurance company the wife recovered damages for the bodily injuries sustained by her. It was held that the words "bodily injuries or death," as used in the policy, did not include the husband's loss of services of his wife. It was declared that the provision of the New York statute, now incorporated in Code, sec. 4326a, was an " 'additional interest' clause aimed to protect the public against the operation of a car driven by others than the owner, provided they have the owner's consent, express or implied. The primary purpose of this requirement is to meet the defense in an action on the policy that the owner was

not at the time of the accident operating the car personally or by his agent, although it was being operated by a member of his family or another with his consent express or implied. * * * the owner of an automobile may elect whether to carry any insurance, and, if he elects to insure he may determine the amount and coverage thereof. * * * . In the absence of a direct legislative mandate that the owner of a car must insure against all such injuries, a reasonable construction of the provision in question is that the policy must be read as if it contained an extended liability clause, but that it may be limited in amount and coverage as the parties may agree."

The action, in *Lavine* v. *Indemnity Ins. Co.*, 260 N. Y. 399, 183 N. E. 897, was brought under section 109 of the New York Insurance Law to recover the amount of an unsatisfied judgment obtained against Englert, the owner of the motor vehicle, in an action by the same plaintiff to recover for the death of his decedent, alleged to have been occasioned through the negligent operation of an automobile by an employee of the insured. Englert operated an auto sales business in Albany and another in Schenectady, New York. The policy specifically stated that it covered the business of Englert's auto sales agency in Albany. It was alleged but not proven that the car involved in the accident was owned by Englert. The court said: "While the policy in question must be read as if it contained the extended liability clause provided for under section 109 of the Insurance Law, it must be deemed limited in amount and coverage as set forth in the contract agreement. * * * .

"The policy under consideration must be held limited in coverage to the agreement of the parties as expressed therein. From an examination of the policy and the declarations attached thereto, it is apparent that the policy was intended to cover the ownership or maintenance or use of any automobile for any purpose usual to the assured's operations in the business of auto sales at 225 North Allen street, Albany, New York, including private pleasure use. The premium is based upon the payroll for that particular business. If the evidence upon a new trial establishes that the car was actually owned

by Englert or under his control, and was being driven by a person with the permission, express or implied, of Englert, either upon his business in connection with the Albany sales office, or for private pleasure use, the policy covers," otherwise there was no liability under the policy.

The provision in the policy under consideration in *Bakker v. Aetna Life Ins. Co.*, 264 N. Y. 150, 156, 190 N. E. 327, was: "It is agreed that the automobiles described herein shall be personally driven only by James R. Ryan or by any person within the age limit provided by the policy when accompanied by such named driver." It was held that such restriction was in violation of the statute. Chief Justice Pound declared: "It (the limitation) has the same effect as a provision that the insurance does not cover the instance of any person driving the car with the owner's consent. This law cannot thus be limited by the agreement of the parties." It further held that the owners of private vehicles are free to remain uninsured, and that, if liability insurance is purchased, its coverage may be restricted as to time, place, use and as to the injuries covered.

It appears that the substance of the New York decisions is that the owner of an automobile is not compelled to carry liability insurance on his car. He and the insurance company may agree to restrict the coverage as to time, place, use and as to injuries; but, if the insurance company sells a liability policy, it must extend the same coverage given the named insured to any person operating the car with his permission, express or implied. The statute does not enlarge the coverage for a permissive user beyond that granted to the owner for his own use.

With this background in mind, we turn again to the 1934 amendment and find that the entire statute contemplates extending the benefits of a liability policy beyond mere indemnity to the insured. The first paragraph provides that, although an insured, who has caused damage to others by the negligent operation of his motor vehicle, may be insolvent or bankrupt, this shall not release the insurance carrier from payment of damages for injuries sustained during the

life of the policy, and in the event an execution against the insured is returned unsatisfied, the injured party or his personal representative in case of death may maintain an independent action on the policy. The second paragraph, the one under consideration, evidently was conceived for the benefit of the party who had suffered damage by the negligent use of the insured's car when operated by another with the permission of the owner. This was accomplished by requiring every automobile liability policy sold in Virginia to contain an omnibus clause extending the same coverage as that given the named insured to one legally operating the car with the owner's permission, express or implied. This is the construction placed on the statute by Judge Parker in *Newton* v. *Employers Liability Assur. Corp.*, 107 F. (2d) 164, and by this court in *Maxey* v. *American Cas. Co.*, 180 Va. 285, 23 S. E. (2d) 221. But see, *Shadow* v. *Standard Acci. Ins. Co.*, 111 Ind. App. 19, 39 N. E. (2d) 493; *Sears* v. *Maryland Cas. Co.*, 220 N. C. 9, 16 S. E. (2d) 419.

This construction does not mean that the owner of a motor vehicle is compelled to carry liability insurance, nor does it mean that the insured and the insurer may not agree to incorporate in their contract reasonable restrictions of coverage as to time, place, use and as to injuries.

Defendant contends that the provisions of its policy comply with the foregoing statute and that its standard omnibus clause extends the same coverage to the named insured and to any one to whom such owner grants permission, express or implied, to use the car. It excludes coverage when the owner or any one else operates the automobile in connection with the businesses stated in paragraph "(c)", including a service station.

In *Cartos* v. *Hartford Acci., etc., Co., supra,* we held that an omnibus coverage clause in a policy insuring the owner against loss while the car was being used for business or pleasure did not cover the negligence of another operating the motor vehicle with the owner's permission when it was used to transport passengers for hire.

The facts in the case under consideration are strikingly

similar to the facts in *Ocean Acci., etc., Corp.* v. *Blackstock,* 165 Va. 98, 181 S. E. 364. The exclusion cause in the *Blackstock Case* read: "No coverage shall be extended hereby to any person or organization operating an automobile repair shop, public garage, sales agency or service station, or any agent or employees of such person or organization as respects any accident arising out of the operation thereof." The owner of the car telephoned a service station and asked that his car be taken to the service station for the purpose of freeing the radiator from ice. The service station operator called for the car and on the way to the service station in it had an accident. The sole question involved was whether the operation of the automobile under these circumstances was by the service station operator in his individual capacity as an accommodation to the owner or in his capacity as owner of a service station. It was held that there was no liability under the policy as the car was not being driven with permission granted the driver as an individual but as the operator of a service station. It was further held that the exclusion was based upon reasonable grounds and was valid. In support of this conclusion, the opinion quoted with approval from *Wendt* v. *Wallace,* 185 Minn. 189, 240 N. W. 470, the following extract: "The language in the policy is plain. The intent is clear. Coverage was extended to those driving with permission of the assured. It is equally plain and clear that the company saw fit to limit the extended coverage so as to eliminate the class of risks arising from handling and operation of the car by persons identified and connected with repair shops, public garages, sales agencies, and service stations. Gamble's garage was a 'public garage'. Such limitation is based on reason. The owner does not grant permission to these individuals. Individually they are usually unknown to him. They are in quite a distinct group from persons to whom an ordinary assured usually gives permission to drive his car."

While the two foregoing decisions were made prior to the adoption of the amendment, there is nothing in the language of the amendment which would indicate that the

legislature intended by the act in question to change the rule regarding the right of the insurer and the insured to agree upon reasonable limitations and restrictions of coverage. See *Holland Supply Corp.* v. *State Farm Mut. Automobile Ins. Co.,* 166 Va. 331, 186 S. E. 56; *Ellis* v. *New Amsterdam Cas. Co.,* 169 Va. 620, 194 S. E. 687; *Hinton* v. *Indemnity Ins. Co.,* 175 Va. 205, 8 S. E. (2d) 279; *Sordelett* v. *Mercer,* 185 Va. 823, 40 S. E. (2d) 289.

■ The defendant's policy covered the Plymouth car when operated by the owner or another with his permission for pleasure or in the electrical business of the owner. If the owner had changed his business to the operation of a service station and used the car in that business, under the express terms of the definition of the insured it would not have been covered. This is true whether the owner used the car in operating a service station or whether he permitted another to use the car in the same business. It was not the legislative intent, as gathered from the history of the act and its adoption, to prohibit the insured and the insurer from incorporating in their contract reasonable restrictions as to use— and the restriction in question has been previously held to be so classified.

■ In addition to the foregoing, plaintiff is bound by the decision in *Gable* v. *Bingler, supra.* There it was distinctly held that at the time of the accident Ritchie had surrendered possession and control of his car to the service station and that Jameson was operating the car within the scope of his employment as the servant of Florence R. Gable. The permission was not extended to Jameson for use on Ritchie's business, nor for the personal pleasure of Jameson. There is, therefore, no privity of contract between the plaintiff and the defendant.

■ These findings of fact brought the case squarely within the coverage of the plaintiff's policy which insured Mrs. Florence R. Gable as the operator of a "Gasoline or Oil Supply Stations—retail" in the following language:

"Operations Covered

"This Policy shall apply, except as provided in Exclusions, to such injuries so sustained during the Policy Period while within or upon the locations as described in the Declarations or the premises or the ways immediately adjacent thereto or elsewhere by reason of the business operations carried on by the Insured as described in the Declaration at said locations, including the making or ordinary repairs and the renewal of existing mechanical equipment at said locations."

The use of the car at the time Bingler sustained his injuries was a use in a more hazardous operation than that assumed by defendant. It was a risk which plaintiff had assumed and for which it was entitled to charge a higher premium than that charged for defendant's coverage. The saddle has been put on the right horse.

The judgment of the trial court is affirmed.

*Affirmed.*