## Richmond

EDITH F. FURR v. MILDRED ARNOLD.

April 24, 1961.

Record No. 5206.

Present, Eggleston, C. J., and Spratley, Buchanan, Whittle, Snead and l'Anson, JJ.

The opinion states the case.

*John T. Hazel, Jr. (Jesse, Phillips, Klinge and Kendrick*, on brief), for the plaintiff in error.

*Ralph G. Louk* and *Guy O. Farley, Jr.*, for the defendant in error.

SNEAD, J., delivered the opinion of the court.

Mildred Arnold, appellee, instituted action against Edith F. Furr, appellant, in the County Court of Fairfax county by a warrant alleging non-payment of $2,000, with interest from April 10, 1958, due plaintiff by defendant as a result of a breach of a verbal contract and failure to pay a check dated April 10, 1958, in the amount of $2,000 drawn on the Vienna Trust Company by defendant and made payable to plaintiff. Defendant filed an affidavit of substantial defense denying any indebtedness to plaintiff and requested removal of the case to the Circuit Court, which was granted. The court heard the case without the intervention of a jury and awarded plaintiff a judgment for $2,000 with interest from February 26, 1960. We granted defendant an appeal.

In substance appellant's contention is that the court's ruling is contrary to the law and the evidence. Therefore, the evidence will be stated in some detail.

The litigants will be referred to as plaintiff and defendant in accordance with the positions they occupied in the court below.

Defendant was the sister of Reuben R. Jones, now deceased, who was a resident of Norfolk for several years prior to his death. His wife, Emma R. Jones, survived him. Plaintiff was a close friend of Jones for a number of years, from the time they both worked in the Washington area during World War II. After Jones and his wife moved to Norfolk, he often returned to Fairfax county on "business trips", and on these occasions he stayed with plaintiff at her residence, indicating to his wife that he was staying with his sister, who also lived in Fairfax county. In correspondence, Jones addressed plaintiff as "Honsie-Boo" and expressed his love for her. Defendant relied heavily on her brother for advice. She knew of her brother's close friendship with plaintiff and occasionally the three visited socially. Plaintiff and defendant met several times when Jones was not present. The relationship among the three was entirely social; no business relationship ever existed among them.

In March, 1958, Jones anticipated entering a Norfolk hospital for surgery, and having had a history of heart trouble, he recognized

the possibility that he would not survive the operation. During the latter part of the month he visited Fairfax and discussed the proposed operation with both plaintiff and defendant. He also discussed with them certain property disposition in event of his death and a loan of $5,000 he was arranging at the Falls Church Bank.

Jones told plaintiff and defendant that he would send a check payable to defendant in the amount of $3,500, and in event of his death he wanted her to cash it immediately at the Falls Church Bank and give $2,000 to plaintiff and keep $1,500 for herself. He explained he wanted to handle the transaction in this manner so that when the check cleared, his wife would have no knowledge of the true disposition of the money. Defendant agreed to comply with his wishes but requested that he put in writing what he desired so there would be no misunderstanding.

On April 2, 1958, Jones and his wife executed a note for $5,000, payable to the Falls Church Bank, where they maintained a joint checking account in which the proceeds of the loan were deposited. The loan was fully insured.

After he returned to Norfolk and before surgery he drew a check on the Falls Church Bank in the amount of $3,500, payable to defendant, and on April 2, 1958, forwarded it to plaintiff by registered mail. In an accompanying letter he directed that if the operation was not successful "this check is to be divided $2,000 to you and $1,500 to Edith (defendant)." He then wrote to defendant explaining what he had done and requesting that she cash the check "as soon as possible" at Falls Church Bank upon notice of his death, giving plaintiff $2,000 and retaining $1,500 for herself. He stated in the letter he had told his wife that defendant was to "receive" $3,500, but had not informed her he had mailed the check.

The operation was performed and several days later defendant visited her brother in the hospital in Norfolk. When she returned to Fairfax, she informed plaintiff that the operation appeared to be successful. However, about 5:30 a.m. on April 10, 1958, defendant received a telephone call that her brother had died several hours before. Defendant telephoned plaintiff, conveyed the message and requested plaintiff to come to her home. According to plaintiff, during the conversation defendant asked her to bring the check with her and that she (defendant) stated: "Rube told us to take that check to the bank as soon as we heard of his death." Defendant also advised Jones' relatives, Mr. and Mrs. William H. Gamble, of his

death. Plaintiff and the Gambles arrived separately at defendant's residence at about 7:30 a.m. There was some discussion about the $3,500 check which plaintiff had brought with her, and defendant testified that plaintiff asked her to go immediately to the Falls Church Bank to cash it. Defendant suggested that Gamble be consulted; plaintiff objected, stating that "All we have to do is what Reuben asked us to do. Take the check to the Bank and get it cashed." However, defendant did consult Gamble who suggested that nothing be done until he could get appropriate advice. He left shortly thereafter.

Defendant was emotionally upset over her brother's death, and when plaintiff again attempted to persuade her to take the check to the Falls Church Bank, defendant said she was in no condition to go through the "red tape" at that bank where she was unknown, but would take it to her bank in Vienna. They arrived at the Vienna Trust Company shortly before 9 o'clock where defendant deposited the check to her account.

There was some conflict in the testimony as to the circumstances leading to defendant's making out her personal check for $2,000 payable to plaintiff after they returned to defendant's home from the bank. Defendant testified that plaintiff insisted on the check being drawn to evidence the $2,000 in event something happened to defendant. Plaintiff said that she did not mention it and that defendant issued the check "voluntarily". Plaintiff deposited the check to her account the following day.

Mrs. Jones arrived in Fairfax on April 11 to complete funeral arrangements for the burial of her husband in Fairfax. Both plaintiff and defendant testified that Mrs. Jones and defendant were not good friends although Mrs. Jones realized her husband's protective interest toward defendant. On the evening of April 12 after the funeral, Mrs. Jones' brother, Nelson Rankhorn, visited defendant and gave her a cashier's check in the amount of $3,500, dated the same day, drawn on the Falls Church Bank, indicating that this was something decedent desired her to have. The check was charged to the joint account of "Reuben R. Jones or Emma R. Jones" at the Falls Church Bank and had been issued in exchange for a check drawn that day by Emma R. Jones. Defendant telephoned plaintiff and advised her of the receipt of the cashier's check.

The next week plaintiff was notified that the $2,000 personal check of defendant had not cleared the account, and defendant was advised that the $3,500 check of Jones, dated April 2, 1958, had

not cleared his account at the Falls Church Bank, both checks failing to clear because of insufficient funds. The bank's account ledger showed that the $3,500 check of Mrs. Jones reduced the funds in the account to $2,922.64.

There is some conflict in the testimony as to conversations between plaintiff and defendant after the check did not clear. Defendant testified that she "had been trying to get the $2,000 for her" but did not intend that it would be paid from the cashier's check received from Mrs. Jones. On the other hand plaintiff testified that when defendant informed her of receipt of the $3,500 cashier's check, she stated "if the first check didn't go through the bank, she would see to it that I got $2,000.00 from the money for the certified check." Plaintiff also stated that when defendant called and notified her the check of Jones had been returned for insufficient funds, she reminded her of her promise "to see to it that I got the $2,000.00." She said defendant told her at this time she had changed her mind.

Defendant testified that her brother told her he wanted her to have $5,000, and when she asked him if he wanted Mrs. Arnold to have $2,000 of it, he said he did not, that it was for defendant. She claimed that the $3,500 received from his widow, plus the $1,500 she would have received from Jones' check had it cleared made up the $5,000 he desired her to have. Plaintiff said defendant never mentioned to her that she was to receive $5,000 and that if such were true Jones would have told her.

Attached to Jones' will, executed on April 9, 1934, was a paper writing, dated March 30, 1958, which was shortly before he entered the hospital, and it included the following language: "Note at Falls Church Bank is insured and will be paid at my death. Edith (Mrs. Furr) *benifits* by 3500.00 and wife by 1500."

In rendering judgment for plaintiff, the trial court stated orally that it was immaterial whether the $3,500 received by defendant resulted from the payment of Jones' check or from the cashier's check. The court further said:

"The check, itself, is merely an instrument or a vehicle by which the $3,500.00 was to be drawn out of the Falls Church Bank. In considering that, we look not at the check but at the bank account, itself, from which the $3,500.00 was removed.

"Now, if there is a failure of consideration in this case for the payment of the $3,500.00 check drawn by the decedent, I don't believe that defense should be available to Mrs. Furr, because the

failure of consideration was caused by Mrs. Furr. The $3,500.00 which Mrs. Furr received is the same $3,500.00 which the decedent placed in the Falls Church Bank, with the understanding that Mrs. Furr was to receive $1,500.00 of it, and the plaintiff was to receive $2,000.00, and it seems to me it is only legal, equitable and justice for Mrs. Arnold to receive that $2,000.00."

The record discloses that defendant has received and retained $2,000 which belongs to and ought to be paid to plaintiff. In *Garber* v. *Armentrout*, 32 Gratt. (73 Va.) 235, 239, it was said: "* * * It is a general rule that where one man has in his hands money which, according to the rules of equity and good conscience, belongs to and ought to be paid to another, an action will lie for such money as money received by defendant to plaintiff's use." See Burks *Pleading and Practice*, 4th ed. § 89, pp. 176, 177; 2 M. J., Assumpsit, § 17, *et seq; Balto. & O. R. Co.* v. *Burke*, 102 Va. 643, 47 S. E. 824; *Armour & Co.* v. *Whitney & Kemmerer*, 164 Va. 12, 178 S. E. 889.

We find no merit in defendant's contentions that the trial court erred in basing its decision on evidence and law proper only in chancery cases; in admitting testimony relating to the cashier's check, and in not holding the contract was unenforceable for failure of consideration.

Here all matters of law and fact were submitted to the trial court for determination. Its judgment has the same weight as a jury verdict. *Sutton* v. *Menges*, 186 Va. 805, 809, 44 S. E. 2d 414; 1 M. J., Appeal and Error, § 276, p. 705. All conflicts in the evidence and just inferences therefrom have been resolved in favor of plaintiff and she is entitled to have the evidence reviewed in the light most favorable to her. *Hebner* v. *Sullivan*, 194 Va. 259, 72 S. E. 2d 689. The judgment cannot be set aside unless the evidence discloses that the judgment is plainly wrong or without evidence to support it. § 8-491, Code 1950. We find that there is ample credible evidence in the record to support the judgment.

Accordingly, the judgment appealed from is

*Affirmed.*