## Richmond

NATIONWIDE MUTUAL INSURANCE COMPANY v. FEDERAL MUTUAL
INSURANCE COMPANY, ET AL.

NATIONWIDE MUTUAL INSURANCE COMPANY v. FEDERAL MUTUAL
INSURANCE COMPANY, ET AL., T/A, ETC.

January 20, 1964.

Record Nos. 5640, 5641.

Present, All the Justices.

The opinion states the case.

*James C. Turk* and *Sheldon E. Haynes* (*Dalton, Poff & Turk; Haynes & Ford*, on brief), for the plaintiff in error.

*John H. Locke* (*Gentry, Locke & Rakes*, on brief), for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

■ This appeal presents for decision a controversy between two insurance companies with respect to liability under policies of insurance issued by them.

Owen J. Ganoe, a passenger in a car driven by Claude O. Wickline, recovered a judgment for $2,000 against Wickline for personal injuries received in a single car accident which occurred December 16, 1960. Paul N. Lambert, owner of the car and also a passenger therein, was killed.

Wickline was president and principal stockholder of, and working at that time as a salesman for, Wick Chevrolet, Inc., of Union, West Virginia. Nationwide Mutual Insurance Company, the appellant, herein called Nationwide, had in force at that time its garage liability policy in which Wick Chevrolet, Inc., was the named insured.

Paul N. Lambert was the named insured in an automobile liability policy issued by Federal Mutual Insurance Company, one of the appellees, referred to herein as Federal, and Wickline was driving Lambert's car with Lambert's permission. Each of these policies contained a provision that if the insured had other insurance against a loss covered by the policy, the company would not be liable "for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss."

In the action in which Ganoe recovered judgment against Wickline, both insurance companies denied coverage and refused to defend Wickline. The law partnership of Dillow and Andrews defended Wickline in that action.

Upon his judgment against Wickline, Ganoe instituted an action against both Nationwide and Federal. The law firm of Dillow and Andrews brought an action against Nationwide and Federal to recover for legal services rendered in Wickline's defense in the personal injury suit brought by Ganoe.

These two actions were by agreement consolidated and heard by the trial court without a jury. After hearing the evidence *ore tenus*

the trial court found: (1) that Wickline's operation of the Lambert car was a hazard covered by Nationwide's garage liability policy issued to Wick Chevrolet, Inc.; (2) that Wickline's operation of the Lambert car was an excluded hazard under Federal's policy issued to Lambert; and (3) that $1,000 plus $22 for expenses was a fair and reasonable attorneys fee for Dillow and Andrews in their defense of Wickline.

Judgments were accordingly granted in favor of Ganoe against Nationwide for $2,000 with interest and costs; and in favor of Dillow and Andrews against Nationwide for $1,022 with interest from the judgment date and costs; but it was adjudicated that the plaintiffs recover nothing from Federal and that Federal recover its costs against Ganoe and Dillow and Andrews.

Nationwide assigned error to these judgments, but says in its brief that the sole issue before the court on this appeal "is whether the Lambert automobile at the time of the accident on December 16, 1960, was being used in the automobile business as defined in the Family Automobile Policy issued by Federal Mutual Insurance Company."

The case made by the evidence, as the trial court could have appraised it, was as follows:

Wick Chevrolet, Inc., Nationwide's insured, was a general automobile agency with a franchise for selling Chevrolet automobiles and doing servicing and repair work. Claude O. Wickline, its president, was in charge of sales and worked at it full time. On the morning of December 16, 1960, after checking the operations at Wick Chevrolet, Inc., he drove to Rich Creek, Virginia, in a 1960 Chevrolet demonstrator belonging to the company. He had no particular purpose in going to Rich Creek beyond "just selling automobiles." He had sold a number of cars in Rich Creek and nearby Peterstown, West Virginia, and generally worked in that area. Wickline stopped at a restaurant in Rich Creek about 10:30 or 11 a.m., where he drank some beer. Owen J. Ganoe was also in the restaurant at that time.

About 12:45 p.m. Paul N. Lambert and Colonel Dunn came into the restaurant. Wickline had tried to trade cars with Lambert on previous occasions and he and Lambert talked in the restaurant about trading cars. Wickline told one of his employees, who was in the restaurant at this time, "I'm trying to trade cars with him [Lambert]."

After drinking a beer in the restaurant Lambert and Dunn, accompanied by Ganoe, went outside. Lambert had invited Wickline and

Ganoe to go in Lambert's car to Peterstown to take Dunn home. Shortly after going outside Ganoe came back into the restaurant, told Wickline the others were waiting on him, and said to Wickline: "If you are going with us, and try the car, come on. Buss [Lambert] is waiting on you." With Dunn driving, all four men rode in Lambert's car to Peterstown—a three-mile trip. Automobiles were discussed generally on the trip, and the possibility of a trade between Lambert and Wickline was part of the discussion.

At Peterstown Dunn got out and Lambert, who was in the front seat, slid under the steering wheel. Wickline, who was in the back seat, got out and asked Lambert to let him drive. Lambert then moved over to the middle, Wickline got under the wheel, and Ganoe sat on the right of the front seat.

Wickline testified that when he asked permission of Lambert to drive, his purpose was to check on the car to see how it performed because he thought he might trade for it, adding, "you never know when people are going to trade." It was normal, he said, when working on a trade or a deal to test-drive the car "to see the condition of it, see how they perform, and see if the engine is all right, and the transmission and rear-end, and all four tires," and that was the reason he took over the driving.

Shortly after leaving Peterstown with Wickline driving, the car ran off the road and struck a tree, killing Lambert and injuring Wickline and Ganoe.

Among the hazards defined and covered by the garage liability policy issued by Nationwide to Wick Chevrolet, Inc., are the following:

"The ownership, maintenance or use of the premises for the purpose of an automobile sales agency * * and all operations necessary or incidental thereto; and the ownership, maintenance *or use of any automobile* in connection with the above defined operations * *." (Emphasis added)

An insured under the Nationwide policy "includes the Named Insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such and any person or organization having a financial interest in the business of the Named Insured covered by this policy * *."

Claude O. Wickline, as president of and stockholder in and salesman for Wick Chevrolet, Inc., was clearly an insured under the Nationwide policy. The evidence amply supports the finding that

Wickline's use of the Lambert automobile was motivated by and pursuant to a desire and plan to effect an automobile trade with Lambert. Such use was "in connection with" an automobile sales agency and was a hazard insured by the policy provision quoted above.

Although assigned as error, the holding of the trial court that the Nationwide policy affords coverage to Wickline is not seriously questioned by Nationwide. As stated in its brief, its real contention is that Federal's policy affords coverage; that Federal is the primary insurer because its policy is on the Lambert automobile, and Federal is responsible for loss up to the limits of its policy before Nationwide is liable for any of the loss. Federal, on the other hand, argues that Wickline's use of the Lambert automobile is excluded from coverage by the terms of its policy.

With respect to coverage for bodily injury and the owned automobile, an insured under the Federal policy includes the named insured (Lambert) and "any other person using such automobile, provided the actual use thereof is with the permission of the named insured." Wickline was using the automobile with the express permission of Lambert and was therefore an insured under the Federal policy, but it must be further determined whether the policy covered Wickline's use of the automobile at the time of the accident.

The Federal policy provides under "Exclusions" that "This policy does not apply under Part I [bodily injury liability]: * * * (g) to an owned automobile while used in the automobile business, but this exclusion does not apply to the named insured, a resident of the same household as the named insured, a partnership in which the named insured or such resident is a partner, or any partner, agent or employee of the named insured, such resident or partnership."

"Owned automobile" is defined in the Federal policy as meaning "(a) the private passenger * * automobile described in the declarations," i.e., the Lambert car.

"Automobile business" is defined as "the business or occupation of selling * * automobiles."

The trial court found that inasmuch as the use of Lambert's automobile was in connection with the automobile business of Wick Chevrolet, Inc., the exclusion under (g) of Federal's policy applied and that the Federal policy afforded no coverage to Wickline "under the facts and circumstances existing in this case and at the time and place of the automobile accident in question on December 16, 1960."

We have not previously dealt with the specific exclusion provision here involved, but have applied related exclusion clauses in two cases which emphasize the importance of the "use" to which the automobile was being put when the accident occurred.

*Lumbermens Mut. Cas. Co.* v. *Indemnity Ins. Co. of North America,* 186 Va. 204, 42 S.E.2d 298, was an action by Lumbermens to recover from Indemnity the amount of a judgment paid by Lumbermens to Bingler for injuries caused by the negligence of Jameson, an employee of Mrs. Gable, operator of an automobile service station. One Ritchie, who had run out of gas, gave his car keys to Jameson with instructions to take the car to the Gable service station for gasoline. Jameson injured Bingler while driving the car to the service station. Lumbermens had insured Mrs. Gable against liability "by reason of the business operations" carried on at her service station. Ritchie's car was covered by a policy issued by Indemnity, which excluded from its coverage any person operating an automobile service station "with respect to any accident arising out of the operation thereof."

We applied the exclusion and held that the use of the car at the time Bingler was injured was a use in a more hazardous occupation than that assumed by Indemnity. We affirmed the judgment of the trial court which had dismissed Lumbermens action, saying, "The saddle has been put on the right horse."

In *Ocean Accident &c. Corp.* v. *Blackstock,* 165 Va. 98, 181 S.E. 364, Ocean's policy issued to Miss Wynn provided that it extended no coverage to a person operating an automobile sales agency or service station as respects any accident arising out of the operation thereof. Her brother, using the car with her permission, requested Taylor to get the car and take it to Taylor's service station to thaw out the radiator. On his way to his service station with the car Taylor struck and injured Blackstock, who obtained a judgment against Taylor and sought to collect it from Ocean. We held that the case came within the exclusion clause, and quoted the following from *Wendt* v. *Wallace,* 185 Minn. 189, 240 N.W. 470:

"The language in the policy is plain. The intent is clear. Coverage was extended to those driving with permission of the assured. It is equally plain and clear that the company saw fit to limit the extended coverage so as to eliminate the class of risks arising from handling and operation of the car by persons identified and connected with repair shops, public garages, sales agencies, and service stations.

Gamble's garage was a 'public garage.' Such limitation is based on reason. The owner does not grant permission to these individuals. Individually they are usually unknown to him. They are in quite a distinct group from persons to whom an ordinary assured usually gives permission to drive his car." 165 Va. at 102, 181 S.E. at 366.

In response to a contention that in driving the car to his service station Taylor had stepped aside from his business capacity and was acting in his individual capacity, we said:

"We are unable to see the distinction between driving the car after it had got to the station to determine whether it would run properly, and driving it to the station for the purpose of thawing it out. It seems to us that driving the car under either of these conditions was, or would have been, incidental to thawing it out, and an accident occurring thereunder would, therefore, come within the exception." 165 Va. at 105, 181 S.E. at 367.

In McCree v. Jenning, 55 Wash.2d 725, 349 P. 2d 1071, relied on by the appellant, the exclusion clause applied to a non-owned automobile "while used (1) in the automobile business by the insured * *." "Automobile business" was defined in the policy as including the business of repairing automobiles. There a third person drove the owner's car from an automobile repair shop to get gas so the car could be returned to its owner, and on the way to the service station the plaintiff was struck and injured. It was held that the exclusion did not apply because the car was not then being used in the automobile business. The court said:

"It would appear evident, therefore, that an automobile 'used in the automobile business,' would be one which was employed for some purpose in connection with that business. * *.

"In driving the Jenning automobile to the gas station, Farrell was not using it in the repair business, but was merely accommodating a friend, who in turn was accommodating a customer." 55 Wash.2d at 727, 349 P. 2d at 1072.

In LeFelt v. Nasarow, 71 N.J.Super. 538, 177 A.2d 315, the Superior Court of New Jersey, Law Division, held that the clause excluding from coverage an "automobile while used in the automobile business" did not apply to one engaged in repairing automobiles, who was driving a customer's automobile for the purpose of testing repairs which he had made on it. But in the opinion it was said that "The exclusion relates to the use to which the automobile

is being put, not to the identity or occupation of the person driving it." 71 N.J.Super. at 549, 177 A.2d at 322.

On similar facts *Walker* v. *State Farm Mutual &c. Co.*, 40 Ill. App. 2d 463, 190 N.E.2d 121, held that the exclusion clause was applicable and provided no coverage of the accident.

Whether Wickline was using the Lambert car in the business of selling automobiles when the accident occurred is a question of fact upon which the trial court's finding is entitled to the same weight as a jury verdict, *Furr* v. *Arnold*, 202 Va. 684, 119 S.E.2d 242, and is not to be disturbed unless plainly wrong or without evidence to support it. Code § 8-491.

Here the evidence establishes that Wickline's purpose in driving the car was to aid him in getting an estimate of the car's worth; that Wickline had formerly considered Lambert as a trading prospect; that on the day of the accident Wickline was trying to trade cars with Lambert and that Wickline's driving of the car was occasioned by his desire to trade cars with Lambert. His driving of Lambert's car was an important element in the automobile business in which Wickline was engaged.

These facts, as concluded above, sustain the finding that Wickline was using the Lambert automobile in connection with Wickline's automobile sales agency and hence was covered by Nationwide's policy. Being so used, it was by the same token being used by Wickline in his automobile business within the terms of Exclusion (g) of Federal's policy, and hence there was no coverage of Wickline with respect to the accident by the Federal policy.

The judgments appealed from are

*Affirmed.*