TRAXLER, Circuit Judge,
concurring and dissenting:
Because I do not believe that under Virginia law Susan Smith would be held hable on a theory of conversion for the money fraudulently obtained by her husband, I cannot agree that FIC is entitled to claim the full fraud loss amount from her. However, I agree with the district court on the alternative ground of unjust enrichment for a portion of the claim. For these reasons, I concur in part I.A. of the majority opinion, but respectfully dissent as to the remainder.
*636 I.
Susan’s husband, Myron Smith, collected life insurance benefits from false claims he submitted under two bogus policies he obtained from AFBA. Both policies identified Myron’s brother, Michael C. Smith, as the primary beneficiary. AFBA approved both claims and paid out benefits of $300,000 in four separate checks. Two checks, totaling $150,000, were issued in 1997 and two checks totaling the same amount were issued in 1998. All four checks were made payable to Michael and deposited into a joint USAA account in the names of Michael and Myron. There is no evidence that Susan had any knowledge of the scheme or of her husband’s receipt of this money.
During a routine investigation in the fall of 1998, the Central Intelligence Agency (“CIA”), which employed Susan, discovered unusually large deposits in Myron and Susan’s joint North West Federal Credit Union (“NWFCU”) account. The CIA informed AFBA of the possible theft of life insurance proceeds around July 22, 1999. AFBA, in turn, contacted appellee FIC to initiate a claim under FIC’s fidelity policy issued to AFBA. FIC accepted the claim and paid AFBA $290,000 on December 21, 1999.
In March 2000, FIC filed an action in the district court against Susan and Michael for conversion and against Myron’s estate (Myron having died a few months earlier) for conversion and fraud. The court dismissed the claims against Michael and Myron’s estate without prejudice for lack of service of process. The court then granted partial summary judgment on FIC’s motion that it had standing to assert the remaining conversion claim against Susan, and thereafter conducted a bench trial. At the conclusion of the evidence, FIC moved without objection to amend its complaint to add a claim against Susan for unjust enrichment as to insurance proceeds from 1998.[1]
The court gave FIC a judgment of $229,449.24 against Susan on its conversion claim, representing the portion of the $300,000 that was used to pay Susan’s personal obligations as well as obligations for which Susan and Myron were jointly responsible. The court calculated this figure based on disbursements it broke into four categories. Category 1 reflected checks drawn by Myron on the USAA account totaling $57,261.52, which Myron used to satisfy Susan’s individual and joint obligations. Category 2 reflected one $56,000 check drawn on the USAA account by Myron and given to Susan, who deposited the check into their joint NWFCU account and directed NWFCU to pay off various joint NWFCU loans. Category 3 reflected one $137,000 check drawn by Myron on the USAA account that was deposited in the NWFCU account and used to pay off assorted bills, loans, and other obligations of Susan and Myron. Category 4 was a single $4,500 USAA account check made payable to Susan, which she deposited into the NWFCU account. See Federal Ins. Co. v. Smith, 144 F.Supp.2d 507, 512-16 (E.D.Va.2001). The district court also found that FIC was entitled to judgment on a portion of this amount ($96,687.72) on the alternative ground of unjust enrichment. The lower figure on the unjust enrichment claim resulted from the expiration of the statute of limitations on a portion of the loss amount.
II.
By the time FIC brought this action to recover the stolen money, the two-year *637 statute of limitations had apparently run on a considerable portion of FIC’s unjust enrichment claim, sharply limiting the amount of recovery available under that theory. Thus, in order to recover the total sum paid out to Myron, FIC pursued a claim for conversion, which carries a five-year statute of limitations. In my judgment, the need to proceed under conversion has compelled FIC to try to fit a square peg into a round hole.
As my colleagues explain, there is no direct controlling precedent in Virginia allowing a conversion action against an innocent third party for whose benefit embezzled funds have been spent. Thus, we look to general principles of conversion law in Virginia and elsewhere. As the district court and my colleagues point out, the tort of conversion encompasses “[a]ny distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith ... irrespective of good or bad faith, care or negligence, knowledge or ignorance.” Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 92 S.E.2d 359, 365 (1956); see also Hairston Motor Co. v. Newsome, 258 Va. 129, 480 S.E.2d 741, 744 (1997). In my view, however, Susan’s exercise of dominion or control is irrelevant. The property at issue cannot be recovered under a theory of conversion because the four AFBA checks were cashed, the cancelled checks were returned to AFBA, and the cash received in return lost its identity when it was commingled with other funds.
Conversion descends from the common law action of trover. It “originated ... as a remedy against the finder of lost goods who refused to return them to the owner but instead ‘converted’ them to his own use.” Restatement (Second) of Torts § 222A cmt. a (1965). Whether property could be the subject of an action for conversion was assessed on the basis of the fiction of losing and finding, i.e., any tangible chattel that could be lost and found could be converted. See W. Page Keeton, et al., Prosser & Keeton on the Law of Torts, § 15, pp. 90-92 (5th ed.1984). Initially, it was held that money could not be converted unless it was contained within a bag or chest. See Holiday v. Hicks (1598) 2 Cro. Eliz. 638, 661. However, subsequent cases in England held that specific money could be the basis of an action for conversion if there was an obligation to pay or deliver money as it had been initially identified or segregated. This treatment has persisted and many jurisdictions still require that money be identified or segregated in the manner that a specific chattel can be. See, e.g., Allied Inv. Corp. v. Jasen, 354 Md. 547, 731 A.2d 957, 966 (1999); SSI Med. Servs., Inc. v. Cox, 301 S.C. 493, 392 S.E.2d 789, 792 (1990); Johnson v. Life Ins. Co. of Alabama, 581 So.2d 438, 442-43 (Ma.1991); Taylor v. Powertel, Inc., 250 Ga.App. 356, 551 S.E.2d 765, 769-70 (2001); DeChristofaro v. Machala, 685 A.2d 258, 263 (R.I.1996).
The limitation on the tort of conversion to tangible property has been gradually relaxed so that some courts have also come to permit actions involving documents in which intangible property rights have been merged, such as with a check, a promissory note, or a stock certificate. See Prosser & Keeton, supra, at 91. Because the document symbolizes or embodies the right to property, the conversion of the document has been held to include conversion of the intangible rights that the document represents, and to carry damages for it. See id. However, the evolution of the tort has largely stopped with the kind of intangible rights merged in or identified with a document. In keeping with the scope of this evolution, Virginia has allowed conversion claims premised on documented intangible property rights. See United Leasing Corp. v. Thrift Ins. Corp., 247 Va. 299, 440 *638 S.E.2d 902, 906 (Va.1994); Unlimited Screw Prods., Inc. v. Malm, 781 F.Supp. 1121, 1131 (E.D.Va.1991) (interpreting Virginia law). However, where the rights at issue amount to undocumented intangible property rights — those that are not merged with a document and so cannot be physically possessed — Virginia’s Supreme Court has held that they cannot be validly claimed in an action for conversion. See Thrift, 440 S.E.2d at 906 (holding that plaintiffs undocumented intangible property rights, represented by a fraudulent stock certificate, are not subject to a cause of action for conversion).
In this case, the property that Myron fraudulently obtained was represented by the four checks, each of which he deposited into the joint USAA checking account he shared with his brother. Once he deposited the AFBA checks into the USAA account and they were paid, the fraudulently obtained orders to pay money were fulfilled and cancelled. Thus, the original documents (the four checks) ceased to embody any intangible property rights and the funds formerly represented by the checks became part of a fungible pool of debits and credits in the bank. The funds formerly represented by the checks were not segregated and, in my opinion, were no longer susceptible to an action for conversion.
This is not to say that cash or negotiable instruments cannot be recovered on a theory of conversion. See, e.g., United States v. Moffitt, Zwerling & Kembler, P.C., 83 F.3d 660, 670 (4th Cir.1996). So long as money is kept separate and identifiable, it can be converted. Jasen, 731 A.2d at 966; Lewis v. Fowler, 479 So.2d 726, 726 (Ala.1986) (money must be segregated to be susceptible to an action for conversion).[2] Nor is this to say that FIC could not have pursued Myron Smith for converting the four original checks. The critical distinction is that Susan Smith was never involved in the act of converting the checks and did not benefit from Myron’s actions until after the documents supporting FIC’s intangible property right had been fulfilled *639 and cancelled. Despite the lower court’s assiduous efforts to trace what was owed to FIC, once the AFBA checks were cashed, there ceased to be any meaningful way to treat the funds they once represented as having been segregated according to the common law requirements necessary to sustain an action for conversion.[3]
This much of the fiction of losing and finding associated with the tort must remain intact, else the concept of conversion itself loses its distinct character. If this were simply a matter of holding on to a “hoary limitation,” there might be no cause for concern. Prosser & Keeton, supra, § 15 at 91. However, the dangers of conversion losing such a distinguishing quality are readily apparent. Susan’s debts were settled by payments made directly out of the USAA account on her behalf or by payment of checks into and out of her jointly-held NWFCU account by Myron. Under the theory advanced by the district court and affirmed here, if money is paid out of an account that contains some portion of funds “traceable” to a prior act of conversion, then any innocent third party receiving the benefit of that “traceable” money might be liable for conversion and compelled to pay it back. Such a principle sets no practical limit on the extent to which a court may pursue and authorize the repossession of funds.
There is a solution in this case, however, that makes a revision of the concept of conversion unnecessary. It is outlined in the alternative holding of the district court and in the language used by my colleague to describe Susan’s culpability:
In this case, Susan Smith gave no consideration for the funds that were used to enrich her financial position by paying off her debts, and FIC’s rights to the funds continued through the time the funds were used to pay those debts, at which point Susan Smith’s creditors gave valuable consideration for the funds.... When the debt was paid, the value of her estate ... was increased in the amount of the payment.
Majority Opinion, supra at 634. I agree with this assessment, but believe it points to a different conclusion. The theory described is one of assumpsit, or unjust enrichment, not of conversion, and the law of unjust enrichment is well-settled in Virginia. See, e.g., Furr v. Arnold, 202 Va. 684, 119 S.E.2d 242, 246 (1961) (“It is a general rule that where one man has in his hands money which, according to the rules of equity and good conscience, belongs to and ought to be paid to another, an action will he for such money as money received by defendant to plaintiffs use.”); Robertson v. Robertson, 137 Va. 378, 119 S.E. 140, 141 (1923) (“Assumpsit will He whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund.” (citation omitted)); Shores v. Shaffer, 206 Va. 775, 146 S.E.2d 190, 194-95 (1966) (same). It is under the theory of unjust enrichment that I believe this case should be categorized. Had such a claim been advanced in a timely manner and the plaintiff not run afoul of the statute of limitations, I am sure it would have been on this theory alone that the district court would have been able to find Susan Hable for a much greater amount. That the plaintiff cannot recover the entire fraud loss amount on an unjust enrichment theory now does not warrant our bending *640 the tort of conversion to the breaking point.
III.
I would award FIC only the amount recoverable on the alternative ground of unjust enrichment, not the additional amount represented by the ground of conversion. Thus, I concur in part I.A. of the majority opinion, but respectfully dissent as to the remainder.

. It appears that plaintiff limited this motion to the 1998 proceeds because any claim to prior proceeds was barred by the statute of limitations.

. Bader v. Central Fidelity Bank, 245 Va. 286, 427 S.E.2d 184 (1993), should not be read broadly for the proposition that “a wronged party can recover money converted ... even if the money has changed forms.” Majority Opinion, supra, p. 632-633. Rather, Bader specifically deals with a bank’s obligation to an account holder upon payment on a forged instrument and should not be extrapolated to cases such as this involving innocent third parties.
The nature of how funds are held in a bank account illustrates why they do not lend themselves to a conversion action. The Virginia Supreme Court has described the limitations on the means of identifying funds as a specific chattel in the comparable context of susceptibility to set off between funds made the subject of a special deposit with notice to a bank and those deposited into an unrestricted general account:
The general rule is that the relation between a general depositor and the bank in which his deposit is made is simply that of debtor and creditor. The moneys deposited immediately become the property of the bank, and the latter becomes debtor of the depositor.... Thus, the bank has a right of set off of any debt due it by the depositor against such deposit. However when funds are deposited for a special purpose with notice to the bank, the deposit does not become the property of the bank and the right of set-off does not exist.
Bernardini v. Cent. Nat’l Bank of Richmond, 223 Va. 519, 290 S.E.2d 863, 864 (1982) (internal quotations and citations omitted). "By depositing the checks in a general account and commingling them with other nonexempt money, the ... funds lost whatever exemptions they may have had.” Id. at 865. This characterization also holds true in the context of conversion. See Universal Mktg. and Entm't, Inc. v. Bank One of Arizona, N.A., 203 Ariz. 266, 53 P.3d 191, 194 (Ariz.2002) (citing Bemardini for the proposition that funds in a bank account, unless segregated, should not be recoverable under a theory of conversion).

. Even if a Virginia court were to permit this case to proceed on a theory of conversion, I do not believe there is any way Susan could be held to have exerted dominion or control over the $57,261.52 in checks (the Category 1 funds) that Myron himself wrote directly out of the USAA account.