Plaintiff appeals from a judgment dismissing, on exception of no cause of action, her suit against the United States Fidelity Guaranty Company, the liability insurance carrier of W.K. Weaver, the owner of an automobile by which plaintiff's husband was severely injured (he later died) as the said car was being driven to Monteleone-Iberville Garage by an employee of the corporation which operated the said garage.
[1] The essential allegations of plaintiff's petition which, on consideration of the exception, must be treated as true, are as follows: W.K. Weaver, who did not reside in New Orleans, arrived at the Monteleone-Hotel at about 1 o'clock on the early morning of Saturday, July 29, 1944, and *Page 635 
caused the Monteleone-Iberville Garage, Inc., to be notified that he desired to park his car in its garage and the garage company sent one of its employees, Warren Lewis, to the hotel to get the car. As the said Lewis was driving the car to the garage by a circuitous route, through his negligence in operating it at a dangerously high speed, it skidded into and severely injured plaintiff's husband, Albert Nyman, who, as a result of his injuries, died on September 4, 1944.
The said Weaver, owner of the car, had obtained from United States Fidelity Guaranty Company a policy of liability insurance under which that company had designated him as the "insured" and had agreed to indemnify and hold him harmless against any claim for loss or damage resulting from the negligent operation of the car. In the policy there was inserted what is known as an "omnibus clause" which provided that the word "insured" should include "any person while using the automobile and any person or organization legally responsible for the use thereof provided the actual use of the automobile is with the permission of the named insured." In other words, the insurer agreed that, subject to certain exceptions to which we shall later refer, it would indemnify and hold harmless against any claim for loss or damage any person or organization who or which, with the permission of Weaver, might operate the said car.
Act No. 55 of 1930, among other things, provides that when any insurance company shall issue a policy of liability insurance, any person injured or his or her heirs in the event of death, shall have a direct cause of action against the person responsible and/or against the said insurance company.
Acting under the right provided by the said Act of 1930, plaintiff brought this suit against Warren Lewis, the operator of the car, Weaver, the owner, United States Fidelity 
Guaranty Company, Weaver's liability insurance carrier, and the Monteleone-Iberville Garage, Inc.
[2] As we have already said, United States Fidelity 
Guaranty Company filed this exception of no cause of action which, in the District Court, was sustained. Exceptor concedes that were it not for the exceptions to the coverage afforded by the omnibus clause the exception could not properly be sustained; that the fact that Lewis had diverted from his proper route would not deprive Lewis or his employers of the protection afforded by the omnibus clause and that, consequently, because of the effect of the said Act of 1930 this suit could be maintained against it, the liability insurance carrier of Weaver. These concessions result from an appreciation by counsel for exceptor of the effect of the decisions of the Supreme Court in Parks v. Hall, 189 La. 849, 18 So. 191, and of this court in Haeuser v. Aetna Casualty 
Surety Co., La. App., 187 So. 684, as a result of which decisions it is now established in this state that where there is such an omnibus clause, initial permission to use the car is all that is necessary and that once that initial permission is obtained, the protection of the omnibus clause attaches and is not affected by the fact that the user of the car at the time of the accident may have diverted entirely from his proper route or may have been using the car for a purpose entirely different from that which was contemplated when the permission for use of the car was initially given.
For an interesting and thorough discussion of the effect of the omnibus clause see 15 Tulane Law Review 422.
Conceding then that the mere diversion by Lewis from his proper route would not have rendered the omnibus clause inoperative, exceptor points to and relies upon the exception to the omnibus clause found in paragraph "(c)" of the exceptions and asserts that the protection afforded by that clause does not attach here because of that exception which reads as follows:
"* * * The insurance with respect to any person or organization other than the named insured does not apply:
* * * * * *
"(c) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof."
Counsel for plaintiff argues that that exception has no effect whatever unless the person injured or killed is an employee of a public garage, service station or public parking place, and that it has no effect even though the car may be operated by an employee of such an establishment if the person injured or killed is a third person — a member of the general public — an innocent bystander.
[3] We have diligently searched for something in the wording of that paragraph of the exception which might lead us *Page 636 
to believe that this argument is sound but have been entirely unable to read that language except as having one and only one meaning. We read it as meaning that if the permission to use or to operate the car is given to a garage, a service station or public parking place or to any other of the listed establishments or to any agent or employee thereof, then the omnibus clause "does not apply * * * to any accident arising out of the operation thereof." We cannot torture that language into having any other meaning.
We say that we have diligently attempted to see in these words some other meaning because we have hesitated to disagree with our brothers of the Second Circuit who, in Donovan v. Standard Oil Co. of La., La. App., 197 So. 320, reached a different conclusion.
[4] If the facts of that case had been identical with those before us we would find ourselves bound to accept the conclusion which our brothers arrived at because in that case application for a writ of certiorari was made to the Supreme Court and this application was refused. Thus the Supreme Court stamped with its approval the legal conclusion reached by the Court of Appeal for the Second Circuit.
[5] But the facts of that case were slightly different and though we have found it difficult to persuade ourselves that between that case and this there is anything more than a distinction without a difference, still we see a slight distinction and point to it to justify our right to refuse to follow a result which may be said to have the approval of the Supreme Court.
In the Donovan case the artomobile which was involved was owned by the Standard Oil Company of La. Near the place at which that automobile was kept was a service station owned and operated by H.H. Jones. Donovan and his wife came into the service station of Jones and reported that their car, a few miles out on the road near Homer, La., had a flat tire and they asked at Jones' service station that the new tire which they had purchased there be taken to their car and put on it to replace the other one. At the Jones Service Station there was no service car at that time, so Taylor, an employee who was in charge of the station, asked the Standard Oil Co. to lend him the Standard Oil Company's truck so that the Service Station, not in any way connected with the Standard Oil Company, might deliver the tire. This permission was granted and the employee of Jones' Service Station undertook to drive the truck to the Donovan car and in the truck he transported Mr. and Mrs. Donovan. The accident happened in the course of that trip. Donovan and his wife were injured.
It thus appears that in that case the car of the Standard Oil Co. was borrowed to be used for a purpose of the service station whereas in the case at bar the car of Weaver was not borrowed for the use of the service station but was merely taken charge of for the purpose of storing it for Weaver. While it appears to us that the language used in the policy in excluding, from the omnibus clause, operation of any car by an employee of a garage, service station or public parking place is so broad and all-embracing as to exclude one borrowed for the use of the establishment as well as one merely taken possession of for storage for the owner, we think we can see a difference which might be sufficient for an insurance company, if it should see fit to do so, to use language which might include the one and exclude the other. If I take my car to a service station or a garage for purposes of my own and the service station or garage is not to use the car except to, carry out my wishes in repairing it or storing it, it is clear that I do not intend to give permission to use my car in the sense in which the word "use" is ordinarily employed. However if such an establishment asks me for permission to use my car for its interests, as distinguished from my interests, it is clear that a different situation arises. In the first place, I know nothing about the operators or employees of the establishment and do not consent that they or anyone of them may use it for any purpose except that for which I have taken it to them, but if I grant permission to such an establishment to use my car in its own business, it may be assumed that I know something about the nature of the establishment and about its employees and that when I consent to its being so used, my consent carries with it the protection and coverage afforded by the omnibus clause.
This distinction between sending a car to the parking place for storage and lending it to such an establishment for use by that establishment is recognized in Paine v. Finkler Motor Car Co., 220 Wis. 9, 264 N.W. 477, 479, in which that court said: "The reasons for excluding public garages, their agents and employees, from the class of assured brought under a policy by the *Page 637 
consent of the insured, are obvious. When an automobile is delivered for purposes of repair to a public garage or its employee, there is immediately created a bailment which, as a matter of law, places the responsibility for negligence in driving the automobile by garage employees upon the garage keeper under the rule of respondeat superior. There is a material difference in granting permission to drive an automobile to an individual selected by the insured and whose experience, skill, and habits as a driver are known to the insured, and in delivering an automobile to a garage for repair and thereby inferring that the owner is granting permission to any and all employees and agents of such garage, who, in the course of the garageman's business, might be required to drive or operate or work upon the car. It would seem unreasonable to so construe the statute that the words 'operate a car with the consent of the insured' would extend the insurance coverage to all employees of a garage, entirely unknown to the insured, and to whom the insured has not given a personal consent."
We are, ourselves, well convinced, as we have said, that the language which the exceptor has used excludes all operation by such an establishment and we think that the great weight of authority seems to support this view. Appleman, a leading authority, in his work: "Automobile Liability Insurance" at page 17, says: "Garage, Service Station, etc.: There has been little controversy over the interpretation of this clause. Coverage is absolutely excluded when the insured automobile is in the possession of an automobile repair shop, public garage, sales agency, service station, or public parking place whether such place be operated by one individual or a hundred. The exclusion applies whether the automobile has just been turned over to an employee at the insured's home, or when it is being driven back to the insured's home after completion of repairs, or while it is being driven for testing purposes either before or after repairs are made, or while it is being demonstrated for the purposes of sale, or for any other reason while in the possession of an excluded medium * * * The reason usually assigned for justifying the exclusion is stated by the courts to be a sound one. It rests upon the fact that the insured is not individually acquainted with the employees and does not know whether they are good, indifferent or poor operators." The author gives many decisions in support of this statement.
[6] Counsel for plaintiff makes the further contention that even if the omnibus clause would have been excluded had the permission to use the car been given to the garage company, it was not excluded because, as a matter of fact, the permission was not given to the garage company but was given, individually, to Warren Lewis who was sent for the car. Counsel maintains that when Lewis arrived at the hotel to take charge of the car and Weaver gave him permission to use it the permission was not given to Lewis' employer but to Lewis and that thus he became the employee or agent of Weaver and that therefore the permission to take the car was given to him, an individual.
This argument completely loses sight of the realities of the situation and is entirely inconsistent with the very allegations of plaintiff's petition. In Article V she says: "The defendant herein, W.K. Weaver, entrusted and employed andappointed and selected as his agent to take care of his automobile and to garage the same the Monteleone-IbervilleGarage, Inc. and their employees." She follows this with another inconsistent allegation to be found in Article VI, reading as follows: "That the Monteleone-Iberville Garage, Inc. through its agent and employee, Warren Lewis, was placed in charge of the said automobile."
These allegations obviously tell the true story. Weaver, a stranger, probably had never heard of Lewis. He had no intention whatever of giving him individual permission to use his car. All that he intended was that the garage company should take charge of it and, for this purpose, should send one of its employees. The petition shows clearly that the Monteleone-Iberville Garage, Inc. was selected by Weaver to take charge of the car and that the permission to use it given by him was given to that corporation which was, to use the words of the policy itself: "a garage," a "public parking place." Since the exclusion provided by paragraph "(c)" prevents the application of the omnibus clause, plaintiff's petition discloses no cause of action.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed. *Page 638