207 So.2d 657

**MARYLAND CASUALTY COMPANY**

**v.**

**ALLSTATE INSURANCE COMPANY.**

**6 Div. 501.**

Supreme Court of Alabama.

Feb. 22, 1968.

London, Yancey, Clark & Allen, Birmingham, for appellant.

Huie, Fernambucq & Stewart, Birmingham, for appellee.

MERRILL, Justice.

This is an appeal from a decree in a declaratory judgment proceeding, in equity, to determine the coverage of the policies issued by the contending insurance companies on vehicles and parties involved in a collision, as a result of which four lawsuits were filed.

None of the evidence was taken orally before the trial judge. Accordingly, on review here, there is no presumption in favor of his findings from the evidence. We must sit in judgment on the evidence. Henslee v. Merritt, 263 Ala. 266, 82 So.2d 212; Saliba v. Lunsford, 268 Ala. 307, 106 So.2d 176.

The Cosby-Hodges Milling Company owned an automobile which it turned over to their employee, Wayne W. Faulkner, who had the permission of the Cosby-Hodges Milling Company to use the car, both on business for the company and for his own pleasure, as he saw fit. On April 10, 1965, Faulkner drove the automobile to a gasoline station known as the Rocky Ridge Standard Service Station, operated by Bruce Austin, to have the car greased and washed. Faulkner expressed the desire to return to his home while these services were being performed. (Taking customers home and bringing their cars back to be serviced is a customary practice of the Rocky Ridge Service Station.) Charles C. Coshatt, an employee of the service station, went with Faulkner to his home and, upon arrival, took over the operation of the automobile so as to return it to the service station. Enroute, the automobile, driven by Coshatt, was involved in an accident with another automobile in which Diane Carlisle, Paul E. Carlisle, Jr. and Ann Wehby were riding.

As a result of this accident, Diane Carlisle, Paul E. Carlisle, Jr., Ann Wehby and Jimmy Wehby brought suit against Bruce Austin, doing business as Rocky Ridge Standard Service Station; Standard Oil Company, a corporation; Cosby-Hodges Milling Company, a corporation; and Charles C. Coshatt.

Cosby-Hodges Milling Company is the named insured in a policy of insurance, termed a Comprehensive Liability, on the automobile driven by Faulkner and carried with Maryland Casualty Company, hereafter referred to as Maryland.

Bruce Austin, individually and doing business as Rocky Ridge Standard Service Station, is the named insured in a policy of insurance, termed a Garage Liability, carried with Allstate Insurance Company, hereafter referred to as Allstate.

On March 6, 1967, Allstate filed a bill for declaratory judgment, asking the trial court to construe its responsibilities under the Garage Liability Policy and to construe, also, the policy of insurance issued by Maryland.

The Maryland policy contained a definition of insured which is generally referred to as the Omnibus Clause. It reads as follows:

"III Definition of Insured

"The unqualified word 'insured' includes the named insured and also includes (1) under coverages A and C, any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such, except with respect to the ownership, maintenance or use of automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, and (2) under coverages A and B, any person while using an owned automobile or hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:

"(a)  * * *

"(b) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;."

The trial court, in its final decree, stated that there were two pivotal questions presented. The first was whether or not Section III (b) of the Maryland policy is effective to exculpate that carrier from liability; and the second question was, if coverage is afforded by both policies, then whether Maryland's coverage was primary or should the coverage be prorated. To answer the first question, the trial court held:

"(1)  Within the meaning of the Maryland Policy, it is required that in order that a factual situation surrounding an automobile accident, within the meaning of the Maryland Policy, be deemed to 'arise out of the operation of a service station' so as to bring it under the coverage afforded by said policy, it must occur under circumstances *necessarily* incidental to the operation of the business of a service station. We hold that the operation of the service station business and the use of the automobile involved in this cause did not take place under such a factual situation or circumstances."

The trial court held that the language in Section III (b), when construed in its entirety and in the context of the entire policy, *is ambiguous; that such ambiguity must be resolved in favor of the instant policyholder.*

Maryland's assignment of error number 1 is that the trial court erred in its final decree in ruling that the language used in Section III (b) of Maryland's policy of insurance was ambiguous. We agree.

Allstate lays much stress upon the accepted rule that doubtful or ambiguous terms in an insurance policy are to be construed favorably to the insured. Rodgers v. Commercial Casualty Ins. Co., 237 Ala. 301, 186 So. 684; St. Paul Fire and Marine Insurance Co. v. Thompson, 280 Ala. 67,

189 So.2d 866. However, when the language of an insurance policy is clear and unambiguous it must be construed as it reads. The courts are not at liberty to raise doubts where none exist or to make a new contract for the parties. Central Mutual Insurance Co. v. Royal, 269 Ala. 372, 113 So. 2d 680, 72 A.L.R.2d 1283.

■ For convenience, we once again set out the exclusion held to be ambiguous:

"(b) to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof;."

Speaking of the same exclusion, the court in Wendt v. Wallace, 185 Minn. 189, 240 N.W. 470, stated:

"The language in the policy is plain. The intent is clear. Coverage was extended to those driving with permission of the assured. It is equally plain and clear that the company saw fit to limit the extended coverage so as to eliminate the class of risks arising from the handling and operation of the car by persons identified and connected with repair shops, public garages, sales agencies, and service stations. * * *"

In Nyman v. Monteleone-Iberville Garage, Inc., 25 So.2d 634 (La.App.), aff. 211 La. 375, 30 So.2d 123, interpreting the same exclusion clause as present in this case, the Louisiana Court of Appeals stated:

"* * * We read it as meaning that if the permission to use or to operate the car is given to a garage, a service station or public parking place or to any other of the listed establishments or to any agent or employee thereof, then the omnibus clause 'does not apply * * * to any accident arising out of the operation thereof.' We cannot torture that language into having any other meaning."

The trial court erred in holding this exclusion to the omnibus clause to be ambiguous. Its meaning is clear and must be construed as it reads.

Maryland's assignment of error number 4 is:

"For that the court erred in its Final Decree in ruling that the benefits of the policy of Complainant accrued to the Respondents Bruce Austin, individually and doing business as Rocky Ridge Standard Service Station; Standard Oil Company, a corporation and Charles Coshatt under the circumstances of this case."

In Ocean Accident & Guarantee Corporation v. Blackstock, 165 Va. 98, 181 S.E. 364, the exclusion clause read:

"No coverage shall be extended hereby to any person or organization operating an automobile repair shop, public garage, sales agency or service station, or any agent or employees of such person or organization as respects any accident arising out of the operation thereof."

In the *Blackstock* case, supra, a customer called Taylor's Filling Station, having concluded that his sister's car, which he was driving, was frozen. The customer asked Taylor to come to his residence to get the car and take it to his filling station to thaw it out and then to bring it back to the house. Taylor agreed to do so and on his way to the filling station in the customer's car struck and injured the plaintiff, Blackstock. Blackstock brought suit against Taylor which resulted in a favorable verdict. Execution against Taylor was returned "no effects" and Blackstock brought suit against Ocean Accident & Guarantee Corporation under a policy issued to the customer's sister, the owner of the car.

After setting out the facts of the case, the Virginia Court stated:

"The sole question presented by the record is whether the provisions of the policy of insurance issued Miss Wynn cover Norman Taylor so as to render the com-

pany liable to the plaintiff injured by him, or whether the company is exempted from liability by the exceptions to the coverage provisions of clause 7 of the policy. It is conceded that Norman Taylor operated a 'service station.' He himself says so. The real question to be determined is, therefore, whether the accident was one 'arising out of operation' of said service station within the meaning of said provisions of the policy."

The trial court had held that Taylor, having driven the car from the customer's home to the service station, was not a necessary incident to thawing the car out and that Taylor had stepped aside from his business capacity and was acting in a separate and distinct sphere. The trial court then stated that if Taylor "had gotten with the car to the service station, and then, in order to determine whether it would run properly, he had driven it around the block, and while doing so had struck plaintiff, the accident would have arisen out of the operation of the filling station."

The Virginia Supreme Court, reversing, stated:

"We are unable to see the distinction between driving the car after it had got to the station to determine whether it would run properly, and driving it to the station for the purpose of thawing it out. It seems to us that driving the car under either of those conditions was, or would have been, incidental to thawing it out, and an accident occurring thereunder would, therefore, come within the exception."

In Pennsylvania Threshermen and Farmers' *Mutual Casualty Insurance Company* v. Travelers Insurance Co., 233 Md. 205, 196 A.2d 76, where the exclusion clause was identical, the court stated:

" * * * In *construing this and similar* language in insurance contracts such as 'any accident arising out of the operation' of a repair shop (the language used in Travelers' policy), the Courts have been

reluctant to attempt to set forth a hard and fast definition thereof, preferring to base their decisions upon the facts and circumstances of each particular case, in which due consideration is given to such factors as the nature of the transaction, its connection with the business, and whether it is a natural and/or necessary incident of the operation thereof, though not necessarily foreseen or expected. * * *."

In that case, one Wolf had done some painting and lettering work on a Mr. Bartko's bus. Bartko drove to pick it up in his own car without an extra driver for the bus. Bartko drove the bus, and Wolf drove Bartko's car. The record, in that case, disclosed that it was not standard practice for Wolf to pick up and deliver vehicles it had painted, although he or his employees had done so occasionally for other customers. While driving Bartko's car, Wolf collided with one Carnes.

In holding that Bartko's insurance carrier, Travelers Insurance Company, which had an exclusion clause identical to Maryland's, was not liable, the Maryland Court of Appeals concurred in the trial judge's statement that:

" ' * * * The fact is that in this particular instance the service was performed for the customer and even though Wolf may have considered it merely a favor or an accommodation, it was nonetheless a service arising directly from the work which he had performed for the customer.' * * * "

Also supporting Maryland's contention that the trial court erred are: Dixie Automobile Insurance Corporation v. Mason, Fla.App., 155 So.2d 172; Nyman v. Monteleone-Iberville Garage, Inc., 25 So.2d 634 (La.App.), aff. 211 La. 375, 30 So.2d 123, and Paine v. Finkler Motor Car Company, 220 Wis. 9, 264 N.W. 477.

Here, in the final decree, the trial court held that the automobile accident did not occur under circumstances *necessarily*

incidental to the operation of a service station. As shown by Ocean Accident & Guarantee Corporation v. Blackstock, supra, the question should have been whether the accident was one "arising out of the operation" of a service station within the meaning of Section III (b). We think it was. If Bruce Austin had not agreed to have his employee, Charles Coshatt, drive Faulkner home, Faulkner, more than likely, would have gone to another service station that would have provided him with that service. This was simply "good business" on Austin's part and was a customary practice of his for the convenience of his customers.

The court erred in ruling that the benefits of Cosby-Hodges Milling Company's policy with Maryland accrued to Bruce Austin, individually and doing business as Rocky Ridge Standard Service Station; Standard Oil Company; and Charles Coshatt. Under the stipulated facts of this case, the accident was one clearly "arising out of the operation" of a service station as shown by the above cited cases.

Allstate has cited St. Paul Fire and Marine Insurance Company v. Thompson, 280 Ala. 67, 189 So.2d 866, but the exclusion clause in that cause is distinguishable from the one in the instant case. As we stated in that case:

"We should further note that the exclusion in the policy involved in this case is precisely as set out herein and we are not dealing with an omnibus clause excluding coverage of accidents arising out of the use of an automobile by persons operating an automobile repair shop, public garage, sales agency, service station, public parking places, etc. The only exclusion involved here is that mentioned, i. e. while 'used in the automobile business', and we find the exclusion not broad enough to cover the situation here presented."

We cannot agree that the Thompson case is apt authority here.

In view of our holding that the Maryland policy excluded coverage because the Faulkner car was being driven by an employee of a service station when it was involved in an accident arising out of the operation of the service station, there is no need to discuss the assignments of error dealing with that part of the decree holding Maryland to be the primary insurer. It is obvious that if coverage was excluded, Maryland could not be the primary insurer.

The decree of the circuit court is reversed and the cause is remanded.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.