The plaintiff recovered from the defendant insurance company under the theft provisions of a policy of insurance. The jury awarded plaintiff $3,248 and the defendant has taken this appeal.[1]
The only issue on appeal is whether the trial court erred in refusing to grant the insurance company's motion for a directed verdict. Put another way, in view of the policy provisions, was sufficient evidence presented to allow the jury to consider whether or not a theft had occurred?
The pertinent policy provision regarding coverage is as follows:
 "B. Theft, but excluding escape or mysterious disappearance."
The facts as revealed by the record are virtually undisputed and reveal that the plaintiff owned 34 brood cows. These cows were three and four years old and were raised from calves by the plaintiff. These cows and others were kept on plaintiff's 200 plus acre farm. Seventy acres of the farm were in pasture and all the acreage was under good fence.
In April 1976, the plaintiff discovered that 14 cows were missing. At the time of the loss, the plaintiff was feeding the cows himself and would count the cows every day. The cows were counted every day because they were springing.
Immediately upon discovery of the loss, the plaintiff began a diligent search of his property and the surrounding area. A friend assisted him in the search. This diligent search was conducted for weeks and revealed nothing. The plaintiff specifically testified that he checked all gaps in the fence and none were open. Furthermore, the fence was in good condition and he discovered no place where the cows could have "gotten out."
There was evidence that approximately two weeks prior to the loss, a tornado had struck in the area. However, the cows were accounted for after this event. The loss was reported to the sheriff's office. In the testimony regarding the report to the sheriff, the following is found:
 "Q. All right. To your knowledge did the Sheriff come out there or any of his Deputies come out there to investigate?
 "A. No, sir, I don't know whether he come out or not. I asked him to come out and come by this Old Trinity Road out by Smyrna there, that there had been a beef slaughtered over there stole out of a pasture adjoining mine, and he said that they had been riding that road pretty regular and that they would check it over.
 "Q. All right, sir. Had you had any cattle to go missing from your pasture before this?
"A. Yes, sir."
Our research reveals that the precise policy terms, as we now have before us, have not been defined by the courts of Alabama. However, the Supreme Court of Nebraska, speaking through the distinguished jurist, Mr. Justice Harry Spencer, has addressed this problem.
In Raff v. Farm Bureau Insurance Company of Nebraska,181 Neb. 444, 149 N.W.2d 52 (1967), we find the following:
 "In popular usage, the word `theft' is another name for `larceny.' As a general rule, however, the term as used in an insurance policy is not necessarily *Page 441 
synonymous with larceny, but may have a much broader and more inclusive meaning. It could cover pilferage, swindling, embezzlement, conversion, and other unlawful appropriations as well as larceny. Here, however, it is apparent that the term is used in a much more restricted sense than is usually the case. While it is not necessary to arrive at a precise definition herein, it is evident `theft' must be construed to mean something other than escape, [or] mysterious disappearance, . . . because these are specific exclusions in the policy.
 "`Escape' is defined in Black's Law Dictionary (4th Ed.), p. 639, as a flight from custody. In Webster's New International Dictionary (2d Ed.), Unabridged, p. 871, the word `escape' is defined as: `To get away * * *; to break away, get free, or get clear * * *.' As used in this policy pertaining to livestock, `escape' must be construed to mean straying from or leaving the place of confinement.
 "`Mysterious disappearance,' under the terms of a theft policy, has been defined as disappearance under unknown, puzzling, and baffling circumstances which arouse wonder, curiosity, or speculation or under circumstances which are difficult or hard to explain. Conlin v. Dakota Fire Ins. Co., N.D., 126 N.W.2d 421." (149 N.W.2d at 55)
With the above in mind, was there sufficient evidence to warrant the submission of the case to the jury? We find there was not, even though we have viewed the evidence and the trial court's action in denying the motion for directed verdict in light of the scintilla rule. See Rule 50 (e), ARCP.
We are of the opinion that a theft loss, under the terms of the policy here, may be proved by circumstantial evidence and ordinarily, whether a theft has occurred within the meaning of the policy, is a question of fact for the jury. See State FarmMutual Automobile Ins. Co. v. Barrow, 46 Ala. App. 392,243 So.2d 376 (1971). However, the circumstantial evidence presented must be of a theft. Otherwise, the verdict would be based on conjecture or speculation. The law in Alabama is clear that a verdict cannot rest upon speculation or conjecture.State v. Mims, 249 Ala. 217, 30 So.2d 673 (1947). The scintilla doctrine does not conflict with this rule. Georgia Power Co. v.Edmunds, 233 Ala. 273, 171 So. 256 (1936). See also, 9 Ala. Digest Evidence 597.
Here, keeping in mind the provision of the policy, we have evidence that the plaintiff had missing 14 cows; that he made a diligent search; that the cows were under good fence with no gaps found in the fence; and that the only evidence at all concerning a theft is that regarding the prior slaughter of a cow on the adjoining property. Suffice it to say that this evidence, standing alone, cannot support a verdict for plaintiff. To do so would be to base a verdict on the aforementioned speculation or conjecture.
We have no evidence, circumstantial or otherwise, of a theft. Such evidence of a theft in this instance might be tracks, the gate left open, some sign that unauthorized persons had been on the property of the plaintiff or other appropriate evidence. Here, from the evidence presented, we have what appears to be a "mysterious disappearance" which is excluded by the terms of the policy.
In accord with our decision, see Meinecke v. State FarmersMutual Ins. Co. of Missouri, Mo.App., 525 S.W.2d 442 (1975);Gifford v. M.F.A. Mutual Ins. Co., Mo.App., 437 S.W.2d 714
(1969); Adler v. Lumber Mutual Fire Insurance Company,280 N.C. 146, 185 S.E.2d 144 (1971); Davis v. St. Paul Mercury Indemnity Co., 227 N.C. 80, 40 S.E.2d 609 (1946).
To hold otherwise would be to convert the insurance policy in question to what might be described as an "all risk" policy. We cannot make a new contract for the parties. Maryland Cas. Co.v. Allstate Ins. Co., 281 Ala. 671, 207 So.2d 657 (1968).
We would be remiss if we did not comment that both counsel have favored this court with excellent briefs for which we are grateful. *Page 442 
The only issues raised have been resolved in favor of the defendant. The case is due to be reversed and rendered for the learned trial judge's failure to grant the defendant's motion for a directed verdict.
REVERSED AND RENDERED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] After the jury's verdict, the learned trial judge ex meromotu set aside the judgment and ordered a new trial. The action of the trial court was entered after notice of appeal. The trial court no longer had jurisdiction to enter its order in view of the notice of appeal. Maya Corp. v. Smith 239 Ala. 470,196 So. 125 (1940). The defendant persisted in this appeal and no issue of this aspect is made by either party.