ADAMS, Justice.
Allstate Insurance Company (“Allstate”) filed an action for a declaratory judgment against Charles William Taylor, Michael Steven Ary, and other defendants, alleging that it had provided no coverage to Ary, who was named as a defendant in a wrongful death action brought by Taylor, and that it was not obligated to defend Ary in Taylor’s action. The trial court entered a judgment declaring that Allstate had “no duty to defend or pay any liability” of Ary in relation to the accident that is the basis of Taylor’s wrongful death action. We reverse that judgment and remand the cause.
Gerald Campbell operated a business in Hanceville named Gerald Campbell & Sons Stables, which boarded and trained horses. Campbell and Ary agreed that Campbell would provide boarding for Ary’s horses and that, in exchange, Ary would paint a truck and two trailers for Campbell.
Ary took Campbell’s truck to Tuscaloosa from Hanceville to paint it. Ary then returned Campbell’s truck to Hanceville, but, because Ary’s truck was too small to pull the trailers to Tuscaloosa to be painted, Ary used Campbell’s truck to take the trailers, one at a time, to Tuscaloosa. While Ary was returning the second trailer to Campbell, he was involved in an accident that killed Sarah Taylor. The accident involved vehicles driven by Charles Taylor and John Gregory, as well as Ary’s vehicle.
Ary was employed by Electro Bake Auto Painting Corporation of Alabama (“Electro Bake”), a company in the business of painting vehicles, and, to make extra money, Ary also painted vehicles apart from his work with Electro Bake. Campbell’s truck was insured by Allstate. Electro Bake insures its vehicles through the Insurance Company of North America (“INA”).
Charles Taylor, as administrator of Sarah Taylor’s estate, filed a wrongful death action against Electro Bake, Ary, Campbell, and others. Allstate filed this declaratory action against Campbell; Ary; John Gregory; Ella Mae Gregory; State Farm Mutual Automobile Insurance Company, which is Taylor’s liability insurance carrier; INA; Taylor, both as an individual and as administrator of Sarah Taylor’s estate; Electro Bake; and various fictitious defendants. Allstate and INA filed motions for summary judgment. The trial court entered the following order in response to those motions:
“This cause came on to be heard upon several motions for summary judgment and upon reviewing the motions and briefs and considering the arguments of counsel, the Court finds as follows:
“1. The phrase ‘such as’ as used in Part I, Exclusions (2) as it pertains to ‘auto business operations’ in the insurance policy issued by the Plaintiff, All *131 state Insurance Company (‘Allstate), to Gerald Campbell is broad enough to include the painting of trailers.
“2. The definition of ‘autos’ in the Allstate policy includes trailers that are attached to autos.
“3. Michael Steven Ary was not acting as an employee of Electro Bake Auto Painting Corporation (‘Electro Bake’) so as to fall within the coverage of the insurance policy issued to Electro Bake by Insurance Company of North America when he was involved in an accident on or about February 2, 1985.
“It is, therefore, ORDERED, ADJUDGED and DECREED by the Court as follows:
“ONE: The .‘Insurance Company Of North America’s Motion For Summary Judgment’ filed December 5, 1988 is granted and Insurance Company of North America has no duty to defend or to pay any liability of Michael Steven Ary arising out of an accident in which he was involved on or about February 2, 1985.
“TWO: The ‘Motion For Summary Judgment’ filed December 14, 1988 by Allstate Insurance Company is granted and Allstate Insurance Company has no duty to defend or to pay any liability of Michael Steven Ary arising out of an accident in which he was involved on or about February 2, 1985.”
The pertinent portions of Campbell’s insurance policy with Allstate are found in four provisions in Part I of the policy, styled “Insuring Agreement,” “Insured Autos,” “Definitions,” and “Exclusions” provisions. Those provisions state, in pertinent part:
“[Insuring Agreement]
“Allstate will pay for all damages a person insured is legally obligated to pay— because of bodily injury or property damage meaning:
“(1) bodily injury, sickness, disease or death to any person, including loss of services; and
“(2) damage to or destruction of property, including loss of use. “Under these coverages, your policy protects a person insured from claims for accidents arising out of the ownership, maintenance or use, loading or unloading of the auto we insure.
“We will defend a person insured if sued as the result of an auto accident. This defense will be supplied even if the suit is groundless, false, or fraudulent. We will defend that person at our own expense, with counsel of our choice, and may settle any claim or suit if we feel this is appropriate.
“Insured Auto
[[Image here]]
“(5) A trailer, while attached to an insured auto, designed for use with a private passenger auto or utility auto. • This trailer can’t be used for business purposes with other than a private passenger auto or utility auto.
“Definitions
[[Image here]]
“(2) ‘Auto’ — means a land motor vehicle designed for use principally upon public roads.
“Exclusions
“This coverage does not apply to liability for....
[[Image here]]
“(2) auto business operations such as repairing, servicing, testing, washing, parking, storing, or selling of autos. However, coverage does apply to you, resident relatives, your partners or the partnership in the business, or employees of the partnership or of the resident relative when using your insured auto.”
The trial court held that the trailer was an “auto” within the meaning of the policy but that Ary was engaged in an “auto business operation,” so that the policy’s exclusion of coverage for “auto business operations” excludes from coverage the accident involving Ary and Taylor. Taylor contends that although the trailer is an “insured auto” under the policy, it is not an “auto” according to the definition of “auto” in the policy, and therefore that the *132 exclusion for auto business operations does not apply; alternatively, Taylor contends that although the policy provides coverage for the accident, Allstate’s argument that the policy excludes coverage for the trailer shows, at worst, that the policy is ambiguous as to whether there is coverage. Allstate argues that the policy, taken as a whole, unambiguously excludes the accident from coverage, especially when one considers the rationale for having that exclusion in the first place.
A literal reading of the policy favors Taylor. The policy excludes coverage for “auto business operations such as repairing, servicing, testing, washing, parking, storing, or selling of autos.” On the same page as that exclusion, the policy defines “auto” for Part I of the policy, in which all the policy provisions relevant to this case are located. “Auto” is defined as “a land motor vehicle designed for use principally upon public roads.” The trailer in this case is not a land motor vehicle; the definition does not by specific terms or even by inference include trailers. The trial court did not state how it determined and why it held that the definition of “auto” included a trailer that is attached to an auto. Allstate argues that that holding is proper, nevertheless, because the provision that defines “insured auto” includes a trailer as an insured auto, and the inference necessarily is that a trailer is to be considered an “auto” for the purposes of Part I of the policy.
That provision that Allstate relies on is clause number (5) under ■ the “Insured Auto” subpart of Part I; it provides that “insured auto” includes “[a] trailer, while attached to an insured auto, designed for use with a private passenger auto or utility auto,” and that “This trailer can’t be used for business purposes with other than a private passenger auto or utility auto.”
That provision does not define “auto.” Instead, the provision states that a trailer is insured while it is attached to an “insured auto.” Neither that provision nor any other provision in the policy explains why the policy would distinguish between “trailers” and “autos” if the policy actually intended for a “trailer” to be considered to be an “auto.” Indeed, Parts II, III, IV, and VI of the policy define auto exactly as it is defined in Part I, and in those parts the policy specifically mentions trailers in addition to, and as distinguished from, autos. Part V, which concerns underinsured motorist coverage, does not refer to vehicles as “autos” at all, but, instead, refers to “motor vehicle,” which is defined as a “land motor vehicle or trailer.” This adds credence to Taylor’s contention that the trailer was not meant to be considered an “auto,” because the word “auto” as defined in Parts I-IV, and VI is limited in its definition to including only “a land motor vehicle”; if Allstate had intended to include trailers in its definition of “auto” in Part I, it could have done so by simply including the words “or trailer” in its definition of “auto” in Part I. On the other hand, in Part I Allstate could have used the term “motor vehicle” as opposed to “auto” and could have defined “motor vehicle” to include a trailer, as it did in Part V. Instead, Allstate did neither. Taylor argues that, accordingly, to interpret the Allstate policy exclusion at issue here to include trailers ignores the specific wording of the exclusion itself, as well as the definition of “auto,” which appears on the same page.
Allstate contends that the text of the policy unambiguously defines “auto” as including a trailer, so that the “auto business operations” exclusion of the policy applies. We disagree with that argument, but we note that in the course of presenting that argument, Allstate does make one contention of colorable merit. Allstate argues that the purpose of the exclusion is to omit from coverage those individuals engaged in repairing cars, because “without any control as to the selection of the driver, the places driven, the manner of driving, the repairman having this entirely in his control, the hazard is too great for indemnity companies to assume.” In support of that argument, Allstate cites Maryland Casualty Co. v. Allstate Insurance Co., 281 Ala. 671, 207 So.2d 657 (1968); Wendt v. Wallace, 185 Minn. 189, 240 N.W. 470 (1932); Brower v. Employers’ Liability Assurance Co., 318 Pa. 440, 177 A. 826 (1935). In Maryland Casualty, an employ *133 ee of a service station was driving an automobile that an individual had left with the service station with the understanding that a service station employee would drive the automobile. The exclusion at issue in that case applied “to any person or organization, or to any agent or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation thereof.” 281 Ala. at 675, 207 So.2d at 659. The Court held that that exclusion was unambiguous and quoted Wendt v. Wallace, wherein the Minnesota Supreme Court, considering an identical exclusion, had stated:
“ ‘The language in the policy is plain. The intent is clear. Coverage was extended to those driving with permission of the assured. It is equally plain and clear that the company saw fit to limit the extended coverage so as to eliminate the class of risks arising from the handling and operation of the car by persons identified and connected with repair shops, public garages, sales agencies, and service stations. * * *
281 Ala. at 675, 207 So.2d at 660.
Allstate seems to argue that the intent of the exclusion was to limit coverage so that when Ary, as an employee of Electro Bake, was driving Campbell’s vehicle, the vehicle and the trailer, 'though by definition “insured autos,” were subject to the policy’s exclusion for auto business operations. This argument does not suggest why the trailer is to be considered an “auto,” but summarily concludes that it should be.
The exclusion and fact situation in Maryland Casualty are distinguishable from those in the present situation. In that case the exclusion explicitly applied to “service stations,” and it was an employee of a service station who was driving the vehicle. In this case it is not clear if Ary’s painting the trailer is an “auto business operation” to which the exclusion applies. The insuring agreement of the policy provides that all claims related to the “maintenance” of the vehicle are covered. We find nothing in the policy or in the record that conclusively indicates whether painting the trailer or returning the trailer after the painting was “maintenance” or was part of an “auto business operation.” Furthermore, we disagree with Allstate’s argument that, like the driver in Maryland Casualty, Ary was a member of a class of individuals that Allstate had sought to omit from coverage because it had no input in relation to the risk that such individuals’ driving the vehicle might create. In this case Campbell did not deliver his automobile to a repair shop, a public garage, or a similar business in such a way that any person employed with the business might operate the automobile and thus increase the risk of loss to Allstate. Instead, Campbell gave permission specifically to Ary to use his automobile. Such permissive use is specifically covered in the policy, and the policy specifically affords coverage to Ary as a permissive driver of Campbell’s vehicle. The fact that Ary used Campbell’s vehicle to return a horse trailer did not increase the risk to Allstate above that assumed by the policy in regard to any person granted permission by Campbell to use the vehicle. By this discussion we do not mean to say that, if the exclusion was otherwise applicable, Ary’s permissive use of the vehicle would allow him to overcome or circumvent the exclusion; we are simply stating that Allstate’s argument is factually flawed in relation to this case.
Considering our entire discussion, we hold that the trial court erred when it determined that the trailer was an “auto” and therefore held that the exclusion for “auto business operations” excluded Ary from coverage for the accident. Additionally, we hold that the policy is ambiguous in regard to whether Ary’s painting the trailer was an “auto business operation” or was “maintenance,” or was perhaps even something else. Such ambiguities are to be construed in favor of the insured and against the drafter. St. Paul Fire & Marine Insurance Co. v. Thompson, 280 Ala. 67, 189 So.2d 866 (1966). Accordingly, the trial court erred when it held that Ary’s painting the trailer was an “auto business operation.”
*134 Allstate is due to provide coverage for this accident, as the policy provides that a trailer attached to an insured auto is covered as an insured auto. The summary judgment in favor of Allstate Insurance Company is reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.