No. 43,803

KIPPER CHEVROLET, INC., a Corporation, *Appellee*, v. THE PATRONS MUTUAL INSURANCE ASSOCIATION, a Corporation, *Appellant*.

(396 P. 2d 348)

Opinion filed November 7, 1964.

*Harley v. Haskin*, of Olathe, argued the cause, and *Roger W. Noonan* and *Bernis G. Terry*, both of Olathe, were with him on the brief for the appellant.

*Harry C. Blaker*, of Pleasanton, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

ROBB, J.: Defendant appeals from (1) the trial court's order of September 18, 1962, overruling defendant's demurrer to plaintiff's petition (2) the court's order of July 3, 1963, entering judgment for plaintiff in the sum of $1,038.98 and costs (3) the findings of fact and conclusions of law entered on July 3, 1963, and (4) the order of August 14, 1963, overruling defendant's motion for new trial.

A stipulation of facts entered into between the parties shows that plaintiff, a corporation, with its principal place of business at Pleasanton, Kansas, was engaged in the business of selling, repairing and servicing automobiles, and that defendant, a corporation, with its principal place of business at Olathe, Kansas, sold automobile casualty insurance. One of its policies covered H. R. Bennett and his personal automobile and under certain conditions, specified that defendant would pay for collision loss to automobiles not owned by Bennett as limited in the insurance contract.

The stipulated and undisputed facts further show that prior to October 4, 1960, the day of the collision, a new model 1961

Chevrolet coach had been stored at the home of Bennett, who was an employee and salesman for plaintiff in its automobile business. This had been done for the purpose of concealing the new model automobile from public view prior to the scheduled initial showing of the new 1961 models. About 6:45 p. m. on the day in question while Bennett, at the request of plaintiff, his employer, was driving and operating the 1961 Chevrolet coach on a county highway, a collision occurred between the 1961 Chevrolet and an automobile driven by George M. Moore which resulted in substantial damage to the new Chevrolet.

According to Bennett's own testimony his concealment of the 1961 model had been done as an accommodation to plaintiff and no compensation was received or expected by him from his employer. Bennett had not kept the car at his farm home for any private personal reason but had done it solely to further the automobile business of plaintiff.

A stipulation between the parties as to the issues in part reads:

"a. Whether the automobile and loss was covered by the insurance contract between defendant and H. R. Bennett under the non-owned automobile provision as shown in part III 'Physical Damage,' coverage E 'Collision,' page 7 of said policy, as defined 'non-owned automobile' on page 8 of said policy, and as defined 'automobile business' on page 3 of said policy, and as subject to exclusions (c) 'This policy does not apply under part III to loss to a non-owned automobile arising out of its ues by the insured in the automobile business' as stated on page 8 of said policy."

On July 8, 1963, the trial court filed its memorandum opinion and the pertinent facts it found are that Bennett was driving the car from his home to plaintiff's place of business and the car was "not then being used as a demonstrator for the purpose of showing it off or enticing prospective purchasers to buy it, nor was it being test driven or repaired, serviced, stored or parked; *it was simply being transported from place to place.*" (Our emphasis.) The trial court stated the question was the *use of the vehicle at the time of the loss,* not the proposed use at some later time, and it then drew a comparison which just does not reflect the true facts in this case, as we see them, and relied on the following quotation from a discussion (based on *McCree v. Jenning,* 55 Wash. 2d 725, 349 P. 2d 1071) in 7 Am. Jur. 2d, Automobile Insurance, § 32:

"And where an automobile was being returned by a repairman to a customer, it was held that the vehicle was not being 'used' in the automobile business, since the vehicle was not employed for some purpose in connection with the business. . . ." (p. 333.)

We cannot agree the above case contained the same facual situation as the one presently before us. The remainder of the memorandum opinion had to do with notice features of the case and the amount of damages with which we are not immediately concerned.

As previously mentioned, judgment was entered for plaintiff and against defendant in the sum of $1,038.92 with costs.

Turning now to provisions of the policy, we find that "PART III— PHYSICAL DAMAGE" (p. 6) and "Coverage E—Collision" (p. 7) cover loss caused by collision to a non-owned automobile. A non-owned automobile is defined as "a private passenger automobile . . . not owned by . . . the named insured . . . while said automobile . . . is in the possession or custody of the insured or is being operated by him." As set out on page 3 of the policy "automobile business" means "the business or occupation of selling, repairing, servicing, storing or parking automobiles." Under "Exclusions" on page 8 of the policy we find the following:

"This policy does not apply under Part III:   . . .

"(c) to loss to a non-owned automobile arising out of its use by the insured in the automobile business.   . . ."

The stipulation of facts of the parties also contains this statement:

". . . that by the terms of such policy defendant agreed to pay for collision loss to one certain automobile owned personally by said H. R. Bennett; and under certain conditions specified in said insurance policy to pay for collision loss to automobiles not owned by said H. R. Bennett, *as limited in said insurance contract.*" ( Our emphasis.)

We are here confronted with a situation where the facts have been gleaned from the undisputed testimony of witnesses at the time of stipulation by the parties but we cannot agree with the trial court's interpretation of them. We are convinced this car was intended to be used for no other purpose than to reveal the new model automobile to promote sales of it and other new model automobiles. Bennett, as sales agent for plaintiff, was driving the automobile for no other purpose than to bring it from its place of concealment to the showroom floor of plaintiff. No sound basis is apparent, therefore, for the trial court's reasoning that Bennett's operation of the car at the time and place of collision was the same as though the car had been owned by his neighbor and Bennett was merely driving it to work.

Since we find no ambiguity in this insurance contract, rules of construction with respect to ambiguity in insurance policies are not applicable.

Reversed with directions to enter judgment for defendant.