434 S.E.2d 374

**Pamela CARNEY, Plaintiff Below,**

v.

**ERIE INSURANCE COMPANY, INC., dba Erie Insurance Group, a Foreign Corporation, and Smallwood–Small Insurance, Inc., a West Virginia Corporation, Defendants Below.**

No. 21570.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1993.

Decided June 28, 1993.

Rehearing Denied Sept. 8, 1993.

---

Laura R. Coltelli, Stephen A. Arnold, Coltelli & Associates, Martinsburg, for plaintiff.

Susan R. Snowden, Martin & Seibert, L.C., Martinsburg, for defendants.

MILLER, Justice:

In this case we consider four certified questions which arose from a motion for summary judgment made by the defen-

dants, Erie Insurance Company and Small-wood–Small Insurance, Inc. (Erie). The questions certified by the trial court pursuant to W.Va.Code, 58-5-2 (1967), address the applicability of a certain exclusion clause contained within the medical payments insurance coverage endorsement included within an automobile liability insurance policy purchased by the plaintiff from Erie.

The undisputed facts of this case are as follows.[1] The plaintiff purchased automobile liability insurance from Erie. The policy was in effect on October 20, 1987, when the plaintiff was involved in a one-vehicle accident while driving a vehicle owned by her employer, Apple Valley Chevrolet–Olds, an automobile dealership. The dealership's vehicle was used by the plaintiff the evening before the accident in order to show it to a potential buyer. The plaintiff did not return the vehicle to the dealership after showing it to the potential buyer, but instead drove it to her home. The accident occurred the next morning on her way to work.

As a result of the accident, the plaintiff received injuries for which medical expenses were incurred. Her medical expenses in the amount of $18,192.19 were reimbursed to her by the West Virginia Workers' Compensation Fund. She also was paid the $1,000 medical payments coverage limit under an insurance policy held by her employer. She now seeks $18,-192.19 from Erie pursuant to the medical payments coverage endorsement of her own automobile insurance policy.

The questions certified by the trial court deal with an exclusion clause within the medical payments coverage endorsement. The relevant exclusion clause within the section of the medical payments coverage endorsement entitled "Limitations On Our Duty to Pay" states: "We do not cover injuries sustained by: * * * (5) anyone while working in a business that sells, repairs, services or parks **autos,** unless the business is **yours.**" (Emphasis in original).

The trial court has certified four questions to this Court concerning the applicability of the foregoing exclusion clause to the facts of this case.[2] The plaintiff argues that the exclusion clause is ambiguous and should be construed liberally to be inapplicable under the facts of this case, thus permitting coverage of the plaintiff's accident. Erie, on the other hand, contends that the exclusion clause is clear and unambiguous and must be held to apply to the facts of this case, thereby precluding cover-

---

1. Because the facts of this case are undisputed, we need not address the applicability of Syllabus Point 7 of *National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987), which states: "An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion."

2. The questions certified and the answers given by the circuit court in the certification order are as follows:

"1. Under the [*National Mutual Insurance Co. v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987) ] case, is the exclusionary language of Erie's policy of insurance of sufficient clarity to place [the Plaintiff] on notice that she would not receive medical payments insurance coverage if she was involved in an automobile accident while operating a vehicle owned by [her employer]? Answer: *Yes.*

"2. Was [the Plaintiff] working in a business that sells, repairs, services or parks autos at the time of the motor vehicle accident giving rise to this civil action? Answer: *Yes.*

"3. Does [the Defendant's] policy of insurance exclude medical payments coverage for injuries sustained by [the Plaintiff] while operating a vehicle owned by [the Plaintiff's employer], and if so, did [the Defendant] correctly deny payment of medical payments benefits to [the Plaintiff]? Answer: *Yes.*

"4. Is [the Defendant's] policy of insurance ambiguous in defining the precise exclusion upon which [the Defendant] relies in denying medical payments benefits to the extent that the Circuit Court should have considered whether or not the Plaintiff was entitled to rely upon a reasonable expectation of coverage? Answer: *No.*"

We find it necessary only to answer Certified Question Nos. 1 and 2 as they are dispositive of the case. In Syllabus Point 5 of *Anderson v. Moulder,* 183 W.Va. 77, 394 S.E.2d 61 (1990), we said: " ' "In a certified case, this Court will not consider certified questions not necessary to a decision of the case." Syllabus Point 6, *West Virginia Water Serv. Co. v. Cunningham,* 143 W.Va. 1, 98 S.E.2d 891 (1957).' Syllabus Point 7, *Shell v. Metropolitan Life Ins. Co.,* 181 W.Va. 16, 380 S.E.2d 183 (1989)."

age of the plaintiff's accident. We agree with Erie.

Erie does not dispute that as a permissive user of the vehicle, the plaintiff is covered by the policy. Its position is that there is no coverage under the exclusion because the plaintiff sustained her injury while she was driving a vehicle owned by Apple Valley Chevrolet–Olds, her employer, to the dealership's vehicle sales lot. Therefore, it contends that the plaintiff was working at the time of the accident. Erie also contends that the exception to the exclusion, providing that the exclusion applies "unless the business is yours," is not applicable because the plaintiff did not own the automobile business.

It is generally held that the medical payments provision in an automobile liability insurance policy is separate from the liability provisions of the policy and is akin to a personal injury accident policy.[3] Customarily, medical payments coverage gives a defined amount of coverage for a stated premium. It also, as is the case here, defines the scope of coverage for persons and vehicles and sets out exclusions, which in the Erie policy are termed "LIMITATIONS ON OUR DUTY TO PAY."

■ We are not cited nor are we aware of any statutory provision that regulates medical payments coverage issued as a part of an automobile liability policy.[4] Such a situation also exists in other states.

*See, e.g., Karabin v. State Auto. Mutual Ins. Co.*, 10 Ohio St.3d 163, 462 N.E.2d 403 (1984). *See generally* 8A J. Appelman & J. Appelman, Insurance Law & Practice § 4902 at 231. Thus, in the construction of coverage under a medical payments provision of an automobile liability insurance policy, it is the language of that provision which ordinarily controls the payment of the benefits.

■ Both parties refer to *National Mutual Insurance Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987), where we reiterated in Syllabus Points 4 and 5 some of our traditional laws with regard to the construction of insurance contracts:

"4. It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.

"5. Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated."

The plaintiff's main attack on the language of the exclusion is based on a series of rhetorical questions.[5] There is no factual dispute that the injury occurred while the plaintiff was working, i.e., returning the car to the automobile dealership. She

---

**3.** *See, e.g., Roberson v. United Servs. Auto. Ass'n,* 330 So.2d 745 (Fla.App.1976); *Hein v. American Family Mut. Ins. Co.,* 166 N.W.2d 363 (Iowa 1969); *Morin v. Massachusetts Blue Cross, Inc.,* 365 Mass. 379, 311 N.E.2d 914 (1974); *Desmond v. American Ins. Co.,* 786 S.W.2d 144 (Mo.App. 1989); *Motto v. State Farm Mut. Auto. Ins. Co.,* 81 N.M. 35, 462 P.2d 620 (1969); *Harkavy v. Phoenix Ins. Co.,* 220 Tenn. 327, 417 S.W.2d 542 (1967); *Foundation Res. Ins. Co. v. Cody,* 458 S.W.2d 214 (Tex.Civ.App.1970). *See generally* 8A J. Appelman & J. Appelman, Insurance Law & Practice § 4902 (1981).

**4.** Whether W.Va.Code, 33–6–30 (1973), which deals with the type of persons rendering surgical care, is applicable to a medical payments provision is not before us. Erie cites W.Va. Code, 33–6–29(c) (1992), as being useful to show legislative policy. We do not find it applicable to a medical payments provision.

**5.** After quoting the exclusion, the plaintiff's argument proceeds in this fashion:

"Does this mean that anyone who works for a car dealership is excluded from coverage? It can not possibly mean that unless Erie is willing to admit that it intentionally and unconscionably defrauded the Plaintiff is [*sic*] selling her a coverage and charging her a premium for coverage she could never use. Does it mean that the Plaintiff is not covered during regular work hours (which we contend it must mean)? If so, then coverage should attach as Pamela Carney was not injured during her regular work hours. Does it mean that the Plaintiff is excluded from coverage if she is injured 'in the course of and as a result of' her employment? If yes, then why does the policy not say as much? Does it exclude the Plaintiff only to the extent that Worker's Compensation pays for her medical bills? If so, then why does it not say that?"

sought and obtained workers' compensation benefits for the injury.

The type of exclusionary language relating to the automobile business found in the plaintiff's policy is quite common in automobile liability policies. The reasoning behind such an exclusion is set out in some detail in 7 Am.Jur.2d *Automobile Insurance* § 90 at 558 (1990):

> "Automobile insurance policies sometimes exclude from their coverage vehicles which are used in the 'automobile business.' Such an exclusion may apply either to a vehicle owned by the insured or to a vehicle which is not so owned, but which otherwise would fall within the coverage of the policy. With respect to owned vehicles, it has been said that such policy exclusions have their genesis in the assumption that an automobile turned over by its owner to a service station or other automobile business is more apt to be driven by an irresponsible person in ways unpredictable by the owner, who thus relinquishes control over its times and manners of operation. Such potential liability was thought to be too great to impose on the insurer the obligation of covering the automobile business as an additional insured." (Footnotes omitted).

In several cases involving similar factual scenarios to the one herein, courts in other jurisdictions have held that coverage is not available. The Virginia Supreme Court in *Nationwide Mutual Insurance Co. v. Federal Mutual Insurance Co.*, 204 Va. 879, 134 S.E.2d 253 (1964), addressed a situation where an automobile salesman was test driving the automobile of a prospective customer that was being considered as a trade-in on another car. The central issue was whether the prospective customer's motor vehicle liability insurance, issued by Federal Mutual, covered the salesman. The policy contained an exclusion for coverage to an "automobile while used in the automobile business." 204 Va. at 883, 134 S.E.2d at 255. The court found that the customer's car was "being used by [the salesman] in his automobile business within the terms of [the] Exclusion[.]" 204 Va. at 886, 134 S.E.2d at 257. *See also Universal Underwriters Ins. Co. v. Strohkorb*, 205 Va. 472, 137 S.E.2d 913 (1964).

The Kansas Supreme Court evaluated a similar exclusion under the collision coverage of an automobile policy in *Kipper Chevrolet, Inc. v. Patrons Mutual Insurance Association*, 193 Kan. 637, 396 P.2d 348 (1964). Kipper Chevrolet had a policy covering the personal automobile of its employee, a Mr. Bennett. It asked Mr. Bennett to garage a new car until it could be displayed in the company showroom. On the day he was returning the car to the showroom, Mr. Bennett was involved in an accident.

Suit was filed when the insurance company refused to pay on the collision coverage portion of the policy. The company conceded that there was coverage except for the exclusion which disallowed coverage "to loss to a non-owned automobile out of its use by the insured in the automobile business[.]" 193 Kan. at 639, 396 P.2d at 350. The court found that the car was being used in the automobile business, i.e., "Bennett, as sales agent for plaintiff, was driving the automobile for no other purpose than to bring it from its place of concealment to the showroom floor." 193 Kan. at 639, 396 P.2d at 350.

Much the same result occurred in *Hodapp v. Shelby Mutual Insurance Co.*, 166 So.2d 772 (Fla.App.1964), where the insured was test driving a car owned by an automobile dealership to determine if he would buy it. An accident occurred damaging the car and the insured was sued by the automobile dealership for the damage to the car. The insured's policy had an exclusion "to any automobile while used in the automobile business[.]" 166 So.2d at 773. The court concluded that the exclusion precluded coverage. *See also Haley v. State Farm Mut. Auto. Ins. Co.*, 130 Ga. App. 258, 202 S.E.2d 838 (1973); *Continental Nat'l Am. Group v. Allied Mut. Ins. Co.*, 95 Idaho 251, 506 P.2d 478 (1973); *Trolio v. McLendon*, 9 Ohio St.2d 103, 224

N.E.2d 117 (1967). *See generally* Annot., 56 A.L.R.4th 300 (1987).[6]

 Thus, we conclude that where an employee of an automobile dealership is returning a vehicle to the dealership and is involved in an automobile accident, the medical payments provision under the employee's personal automobile liability policy will not afford coverage where there is an exclusion under the medical payments provision for "anyone while working in a business that sells, repairs, services or parks autos, unless the business is yours."[7]

Having answered the certified questions, this action is, therefore, dismissed.

Certified questions answered and dismissed.

6. Where a salesperson is using the automobile dealership's car on a purely personal mission, then the salesperson's automobile policy's exclusion on use in the automobile business does not apply because it is the vehicle's use at the time of the accident that is the focal point. *See, e.g., Universal Underwriters v. Farmers Ins. Co. of Idaho,* 108 Idaho 249, 697 P.2d 1263 (App.1985); Annot., 56 A.L.R.4th 293 (1987). Here, the facts show that the insured was returning the car to the dealership after demonstrating it to a customer. This action was not a personal mission.

7. We do not address the plaintiff's argument that Erie's in-house claims adjuster waived the exclusion by initially agreeing to pay the medical payments coverage. This argument is not part of the certified question. *See generally* 46A C.J.S. *Insurance* § 1345 at 210 (1993).